[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 94 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 95 
While there can be no doubt that the United States Government has the power to pass all laws for regulating the transfer of the title of enrolled vessels, as part of its supervisory power over the nationality of such vessels, and while that government may properly require the recording of a mortgage of a vessel, because it is a transfer of the title, there seems no reason why, in regard to vessels any more than any other chattels, the rules of evidence in the State tribunals should be regulated by acts of Congress. As to a purchaser of a vessel, it may be that, as he necessarily is referred to the certificate of enrollment, as part of the seller's title, he is thus put in the way of finding out, at the office where such enrollment was made, whether there be any mortgage of the vessel there recorded. And in this way he (though in a different State from the office) may be held bound by such record, as one of which he either had, or was bound to have, actual notice. This would, however, be but an incidental effect of the statute, and if that effect, and no other, were the object of *Page 96 
the law, that object could hardly be deemed within the jurisdiction of Congress. It certainly need not be called so plainly within that jurisdiction as to make that exclusive of State jurisdiction. And such incidental effect should not be allowed to interfere with the law of a State, passed upon the same subject, for the very purpose of regulating the action of its own citizens and courts. And in the courts of any State, the citizens of another State stand upon the same footing, both as to person and property, as do its own citizens. This must be the rule for chattels, as well as for land. And parties who place personal property within the jurisdiction of any State, are as much bound by its laws in regard to that property, and any lien on, or right or title to it, as if it were land, and incapable of being moved into any other jurisdiction.
It is upon this principle that, "whenever personal property is taken by arrest, attachment or execution, within a State, the title so acquired under the laws of a State is valid in every other State." (Story Conflict of Laws, § 550; 3 T.R., 733;9 Mass. Rep., 468; 19 N.Y., 224.) And if the plaintiff in this case, within this principle, under the laws of New York, by the attachment against Jacobs, acquired a valid lien on this vessel, the judgment below is to be affirmed.
By the laws of Illinois (as by the law of this State on the same subject), the mortgage of this vessel was valid between Jacobs and Aldrich; and if the latter, following the vessel to Buffalo, had then sought to enforce his title, there can be no doubt that our courts would have sustained him in so doing. But suppose (to avoid, for the present, all question as to the U.S. statute), the mortgaged property a horse, and that Jacobs had brought it to Buffalo and sold it to a bona fide purchaser, would our courts sustain Aldrich's title as against this purchaser? To do so, they would be obliged to admit evidence of good faith (in the transaction between Jacobs and Aldrich), without having laid for such admission the foundation of notice in law, which, between our own citizens, our statute provides for in the filing and recording of the mortgage; and further, they would be obliged to call good here, an Illinois *Page 97 
contract which is not good there. How far different would this be from holding a note, made and to be paid in Massachusetts, and reserving seven per cent interest, good here, though bad there? For the validity of a contract, the lex loci contractus
governs: the lex fori applies only to the enforcement of the remedy. Nor is it an answer to say that the contract is valid in Illinois for some purposes, that is, as between the parties to it; for, as to the parties litigant in our court ("as against the rights and interests of any third parties"), the Illinois statute says expressly it "shall not be valid." It is absolutely invalid as to any third person who takes the objection; and as to all such, it vested no title in Aldrich.
Applying this rule to the case before us, leaves the mortgage in the same state of invalidity, as regards the rights of a mere creditor (as this plaintiff is), as if a purchaser were the contesting party; and though this is done in favor of a party who, being really entitled to take only what his debtor has in the property, has no equity as against the mortgagee. Still the law, for the purpose of preventing the fraudulent covering up of property, has seen fit so to extend the rule; and so the law is to be administered. The law is, in substance, that the mortgage having (as to third persons), no power to divest Jacobs of his title, he remains, as to them, with the title in him; and that title is reached by the attachment.
It is not necessary to pass upon the point, whether, in case of a chattel mortgage valid in Illinois by being there recorded, our courts would be bound to enforce, against a bona fide purchaser here, a title of which he not only had no actual notice, but was really in no position to be charged with constructive notice. We simply hold that a mortgage of personal property is no better in this State than in the State in which it was executed, and of which the parties to it are citizens. The judgment of the Superior Court of Buffalo should be affirmed.