WILLIAM D. WOOD *versus* DAVIS R. STOCKWELL.

By virtue of the constitution of the United States, Congress has the exclusive power to provide where the evidences of title of registered and enrolled vessels, in certain cases, shall be recorded.

The State Legislature has no authority, directly or indirectly, to add to or dispense with the requirements of section one of the Act of Congress of July 29, 1850, entitled an "Act to provide for recording the conveyances of vessels."

R. S., c. 91, § 1, providing for the registration of chattel mortgages, does not apply to property in vessels which are duly registered or enrolled according to the laws of the United States.

The plaintiff, as mortgagee of one-eighth of a vessel, demanded it of the assignee of the mortgager, who refused to comply, denying title in the plaintiff and claiming title in himself. The defendant, both before and

Wood *v*. Stockwell.

after the demand, received one-eighth of the net earnings and had paid one-eighth of the repairs. In trover, — *Held*,

1. That the foregoing facts constitute a conversion.
2. That the amount paid for repairs should not be deducted in mitigation of damages.

ON FACTS AGREED.

TROVER for one-eighth of a schooner.

On April 5, 1865, one Ray, of Brewer, in the county of Penobscot and collection district of Bangor, being owner of the schooner "Mill Creek," then enrolled in Frenchman's Bay district, at Ellsworth, mortgaged one-eighth of said vessel to the plaintiff to secure the payment of the former's note of that date; and, on the same day, and on May 5, 1865, Ray conveyed by bills of sale duly executed and re-corded, seven-eighths of said vessel to six other parties in different proportions. The mortgage to the plaintiff was duly sealed and stamped, and recorded in the custom house at Ellsworth, April 18, 1865; but was never recorded in the records of the town of Brewer, nor in the collection district of Bangor. On May 9, 1865, Ray conveyed one-eighth of said vessel to one Holmes, by bill of sale record-ed at Bangor, May 10, 1865, on which day the enrollment was changed from Ellsworth to Bangor. On March 19, 1866, Holmes conveyed one-eighth of said vessel to Stevens & Farrar who, on April 7 following, conveyed the same to the defendant, both by bills of sale duly stamped and re-corded at Bangor.

In the winter of 1865–6, the vessel was managed by William J. Currier, part owner and ship's husband. She was disabled at sea, taken into a southern port, repaired and brought to the north by order of Currier, who, on June 14, 1866, demanded and received from the defendant, as owner of one-eighth of the schooner, $288,89 for one-eighth of the repairs. Currier, at various times, during the year of 1866, paid to the defendant one-eighth of the vessel's net earnings. The defendant never had any actual possession or management of the vessel at any time after said mortgage

to the plaintiff, but Ray continued in the control and management of her as before. The plaintiff never took control or management of said one-eighth, or attempted to do so, until July 28, 1866, when, said vessel being at Bangor, the plaintiff's attorney demanded, at Bangor, one-eighth of her of the defendant, who refused to comply with said demand, denied plaintiff's title and claimed title in himself.

On Oct. 20, 1866, the plaintiff notified Currier in writing that he claimed the earnings of the one-eighth claimed by the defendant, and that he should hold said Currier responsible therefor.

The action was submitted to the full Court, who were to render judgment by nonsuit if they should decide that defendant was not liable for a conversion of the property sued for, or that the plaintiff could not maintain his mortgage against the defendant, for want of a proper record thereof in Brewer or Bangor; and by default, if they should determine otherwise. In the latter case, they were also to determine whether the amount paid by the defendant in June, 1866, for repairs, or any part thereof, should be allowed and deducted in estimating the damages. If the amount so paid by the defendant should not be so allowed and deducted, the damages should be the amount due on note secured by the mortgage to the plaintiff.

*Rowe & Appleton,* for the plaintiff.

*W. C. Crosby,* for the defendant.

Plaintiff's title rests in a "mortgage of personal property" given by a mortgager, residing in Brewer, and not recorded in Brewer. Such a mortgage is invalid against the defendant, he not being a "party thereto," and "possession of such property" not having been "delivered to and retained by the mortgagee." R. S., c. 91, § 1. That the property mortgaged is part of a vessel does not take the mortgage out of the operation of the statute.

U. S. Statute, c. 27, of July 29, 1850, is only intended

to regulate the use of vessels. *Vinal* v. *Burrill*, 16 Pick., 401 ; *United States* v. *Willings*, 4 Cranch, 55.

The property passes by sale by parol, but to entitle the purchaser to a new register, the Act of Congress must be complied with. *United States* v. *Willings*, 4 Cranch, 55 ; *Mitchell* v. *Taylor*, 32 Maine, 434 ; *Bixby* v. *Franklin Ins. Co.*, 8 Pick., 86 ; *Lamb* v. *Durant*, 12 Mass., 53 ; *Taggard* v. *Loring*, 16 Mass., 336 ; *Wait* v. *Gibbs*, 4 Pick., 300 ; *Badger* v. *Bank of Cumberland*, 26 Maine, 428 ; *Richardson* v. *Kimball*, 28 Maine, 463 ; *Metcalf* v. *Taylor*, 36 Maine, 28 ; *Chadbourn* v. *Duncan*, 36 Maine, 89 ; *Rice* v. *McLarren*, 42 Maine, 157. In *Foster* v. *Perkins*, 42 Maine, 168, this Court has given partial construction to this statute, limiting its application to vessels registered at the time the mortgage was made. " The Act of Congress of July 29, 1850, for the recording in a collector's office of mortgages of vessels, does not supersede a State law requiring the record of such mortgage with a State officer as a condition of its validity against third persons." *Ætna Ins. Co.* v. *Aldrich*, 26 N. Y., 92. See also *Bryant* v. *Steamboat John Jay*, 17 Howard, 399.

Defendant is not liable in trover. No tortious taking is alleged. Taking earnings after paying for repairs is not a conversion.

Demand and refusal are not conversion, but only evidence from which, unexplained, it may be inferred. It is no evidence of conversion until the defendant was proved in possession when demand was made. 8 Vermont, 30 ; 6 Foster, 280 ; *Boobier* v. *Boobier*, 39 Maine, 406 ; 4 Wend., 613 ; 4 N. H., 310 ; 8 Vermont, 110.

Defendant could not have complied with demand without taking vessel out of Currier's possession and control, which he had no right to do as part owner. He could only make a symbolical delivery, or give a written non-claim. Trover will not lie for refusing such. Gravamen of tort, upon which trover rests, is such an intermeddling with the property as deprives the owner of its possession, and then a conversion

to the use of the tort-feazor. Mere assertion of ownership, without intermeddling, is not sufficient. 8 Vermont, 30.

In all the cases in this State, trover has never been maintained without possession in defendant. *Dickey* v. *Franklin Bank*, 32 Maine, 572; *Moody* v. *Whitney*, 34 Maine, 563; *Fuller* v. *Taylor*, 39 Maine, 519; *Scott* v. *Perkins*, 28 Maine, 22; *Head* v. *Goodwin*, 37 Maine, 181. In *Fernald* v. *Chase*, 37 Maine, 289, Judge SHEPLEY has fully discussed this point.

To claim ownership is equivalent to denying title of all others; but, " without proof that he has taken possession of it, or has exercised any dominion over it, cannot amount to a conversion." *Fernald* v. *Chase, ubi sup.* Case finds defendant never had possession. Receiving earnings of ship's husband is only exercising dominion over money, and not over the property producing it. If he has received $80 wrongfully, he can be compelled to refund it, but not to pay the value of a vessel he may never have seen.

Defendant, as assignee of mortgager, could legally take whole earnings until possession taken by mortgagee. *Cheennery* v. *Blackborn*, Abbott on Shipping, 19, note.

Advances for repairs, less earnings received, should be deducted from damages.

DICKERSON, J.—Trover for one-eighth of a schooner. This case comes before us upon an agreed statement of facts, and raises the question whether, as between the mortgagee and the subsequent purchaser of an enrolled vessel without notice, the mortgage must be recorded in the records of the town where the mortgager resides, in addition to the recording at the custom house where the vessel is enrolled. The plaintiff's mortgage was recorded at the custom house in the district where the vessel was enrolled, and not elsewhere. The defendant's bill of sale of a subsequent date, and record, from the same grantor, was duly recorded in the custom house. If the plaintiff's mortgage is valid, he is entitled to prevail upon this branch of the case; otherwise he has no cause of action.

The Act of Congress, approved July 29, 1850, entitled " An Act to provide for the recording the conveyances of vessels and for other purposes," provides " that no bill of sale, mortgage, hypothecation, or conveyance of any vessel, or part of any vessel, of the United States, shall be valid against any person other than the grantor or mortgager, his heirs and devisees, and persons having actual notice thereof; unless such bill of sale, mortgage, hypothecation, or conveyance be recorded in the office of the collector of the customs, where such vessel is registered or enrolled."

Section 1, chapter 91 of the R. S. of this State, provides that " no mortgage of personal property made to secure more than thirty dollars, shall be valid against any other person than the parties thereto, unless possession of such property is delivered to, and retained by the mortgagee; or the mortgage is recorded by the clerk of the town in which the mortgager resides."

Does the State law conflict with the Act of Congress? If so, which is entitled to control?

The discussion of this subject involves an inquiry into the object, meaning and intent of the Act of Congress. Does the Act simply provide a custom house regulation, by which the officers of government may be the better able to detect violations of its revenue system, and enforce its rules in regard to the national commerce? Or does it embrace these objects, and the further purpose of regulating the ownership, transfer and evidence of title of registered and enrolled vessels in certain cases?

The title of the Act recites that it *has* " other purposes" in view than " the recording conveyances of vessels." But the intent of a statute is to be sought primarily from its language. The office of interpretation is to deduce the meaning from the statute, and not to introduce a meaning into it, derived from extrinsic circumstances.

The general import of the statute undoubtedly is, that bills of sale, &c., of registered and enrolled vessels, in a

certain class of cases, when thus enrolled, shall be valid. If the sole object of the Act was to establish the relation between the government and the owners of registered and enrolled vessels, and not the relation between persons claiming to be owners, in certain cases, why was an exception made in the case of "the grantor, mortgager," &c., that between them and their grantee or mortgagee an unrecorded bill of sale should be valid, while it is invalid between the grantee or mortgagee and a subsequent purchaser from the grantor or mortgager without notice, holding under a recorded title? If it had been the purpose of Congress to give the Act this restricted signification, it would have been easy to express such intent by providing that, as between the owners of such vessels and the government, no bill of sale, &c., should be valid unless recorded in the custom house. The Act contains no such restrictive clause, and we are unable to give it this limited interpretation without doing violence to its language. We think the obvious meaning of the Act of Congress is to declare who shall be regarded as owners of registered and enrolled vessels, in certain cases, for the purposes of government, and also, to regulate the ownership, transfer and evidence of title of this kind of property, in the cases mentioned, as between the persons themselves who claim to be owners under a written contract.

The power granted to Congress, under the constitution, "to regulate commerce with foreign nations, and among the several States," extends, not only to the subjects of traffic, but also to the instruments or vehicles by which an exchange of commodities is effected. Shipbuilding and the navigation of ships are the vital agencies of commerce. The power of Congress to regulate commerce would, to a great extent, become a dead letter, if it has no right to legislate upon these subjects. Congress has this power as effectually as it would have had if these terms had been specifically enumerated in the constitution in connection with the word "commerce." *Gibbons* v. *Ogden*, 9 Wheat., 1.

By the sovereign power "to regulate commerce" is meant

the power to prescribe rules and regulations upon that subject, and to enforce compliance therewith. Under this grant of power, Congress has plenary authority over the whole subject matter, and may exercise it to the utmost extent within the limitations prescribed in the constitution. This power can be exercised by one sovereignty alone, since, to concede to another government the power to alter, suspend, supersede or abrogate the prescribed regulations, is to deny sovereignty to the power that establishes them. The grant of this power to Congress is therefore exclusive, covering the whole subject matter and leaving no power in the States to impair or prevent its exercise. It is not a concurrent power like the power of taxation. In exercising the concurrent power of taxation, neither Congress nor the States exercise the power granted to the other. Both governments derive this right from distinct and independent sources, and exercise it over a subject in which they have the common right of participation. From its very nature, too, both governments may exercise the prerogative without interfering with the concurrent right of the other. Not so with the power " *to regulate* commerce." The exercise of this power by one sovereignty is incompatible with its exercise by another; the power "to regulate" ceases to be a sovereign power, when the results of its exercise are liable to be changed by another power.

The power of Congress to regulate commerce is analogous to its power to borrow money on the credit of the United States. That is a sovereign and exclusive power, and cannot be indirectly impaired by State taxation of the securities given by the United States, because such taxation is inconsistent with the supremacy of the national government, tends to embarrass its operations, and might be carried so far as completely to arrest them. *Weston* v. *City of Charleston*, 2 Pet., 449.

But, under the grant of power "to regulate commerce," has Congress the power to prescribe the mode by which the title to enrolled and registered vessels shall be determined

in certain cases?   Is the power to do this inherent in, incident to, implied from, or "necessary and proper" to carry into effect such granted power, or is it a substantive power, distinct and independent in its nature?   If the Act of Congress comes within the former class of powers, it is constitutional; if within the latter, its constitutionality cannot be maintained.   *McCulloch* v. *Maryland*, 4 Wheat., 316.

The Act does not assume to prescribe the mode of making contracts in respect to this kind of property, but to declare what evidence of contracts shall control in certain cases.   The power of Congress over the objects and instruments of commerce, as we have seen, is sovereign and exclusive; it may do what the States separately might have done, in this respect, before the adoption of the constitution, or what they may now do in regard to the subjects within their exclusive jurisdiction.   This power has long been exercised by the States under statutes, identical in language with that of the Act of Congress, in respect both to real estate and personal property under their jurisdiction, and we are not aware that their right to do so has been seriously questioned by any court of competent authority.   The power of Congress is no less ample over this subject.   It has power to establish a revenue system, and, as incident thereto, it may prescribe rules for determining what persons and what property shall be liable for a violation of its revenue laws.   The facility and frequency with which the title to vessels is transferred, the liability of such property to change in value and locality, the opportunities for fraud, and the necessity for a uniform rule by which to determine the rights of conflicting claimants, in certain cases, renders the exercise of such authority by Congress, not only necessary for the government in the execution of its revenue laws, but also for the convenience and safety of parties in their negotiations concerning this species of property.   It would be an anomaly in legislation as well as a vexation to ship owners, to prescribe one rule of ownership as between the government and owners of vessels, and another and a different

one, as between the persons themselves claiming to be owners. The Act of Congress in question is not liable to this imputation.

As Congress has the exclusive power of legislation for the regulation of commerce, including shipbuilding and navigation, and has exercised that power in the case under consideration, the State Legislature has no authority, directly or indirectly, to add to or dispense with the requirements of the Act of Congress. If it may do so in one particular it may in another; if one State may impose conditions or requirements inconsistent with the Act of Congress, another may; and there may be as many conflicting rules and regulations upon this subject as there are States. The confusion that would thus follow demonstrates the wisdom of the framers of the constitution, in not allowing their government, in this respect, to depend upon the pleasure of the States.

We are aware that our conclusion does not harmonize with the opinion of the Court in the *Ætna Insurance Co.* v. *Aldrich*, 26 N. Y., 92. After a careful examination of that opinion, we are unable to recognize the soundness of the reasoning upon which it rests. It seems to us that, in its effort to reconcile State with national legislation, that learned Court has failed to attach sufficient importance to the supremacy of the national government over the matter under consideration, and given the Act of Congress a construction which its language scarcely warrants. While we acknowledge the high authority of that Court upon ordinary questions at common law, we do not feel bound by its decisions upon grave questions of constitutional law, unless they are supported by reasons which convince our judgment.

If the provisions of § 1, c. 91, of R. S., apply to property in registered and enrolled vessels, it conflicts with the "Act (of Congress) to provide for the recording of conveyances of vessels, and for other purposes," by requiring more than that Act declares to be sufficient, and is therefore unconstitutional and inoperative. But that Act is to be construed with reference to its subject matter and the jurisdic-

tion of the Legislature which passed it. By the constitution of the United States, Congress has the exclusive power to legislate upon this subject, and, unless the contrary appears, the legislation of the State will be presumed to conform to the supremacy of the national government. The Legislature is presumed to understand, and not to exceed the constitutional limits of its authority. The language of § 1, c. 91, R. S., does not overcome this presumption; and we do not feel bound to hold that the Legislature trespassed upon the domain of Congress by exercising powers which the constitution confides exclusively to that body; on the contrary our construction of that section is, that it does not apply to mortgages of property in vessels, which are duly registered or enrolled according to the laws of the United States.

The mortgage held by the plaintiff, being duly recorded "in the office of the collector of the customs, where the vessel was enrolled," according to the Act of Congress, "concerning the recording of conveyances of vessels," gave him a valid title as mortgagee, without being recorded in the town where the mortgager resided.

Though the defendant had never been in the actual possession of the one-eighth of the vessel purchased by him of Ray, he paid for repairs made on her, and received his share of her earnings after his purchase. He also denied the plaintiff's title, claimed title in himself, and refused to comply with the plaintiff's demand for delivery of the vessel to him. The plaintiff never took possession nor received any part of the vessel's earnings prior to the demand.

As assignee of the mortgager of one-eighth of the vessel, the defendant had no right to the exclusive possession of the vessel. By contemplation of law, in this capacity, he was in possession through the master, who was his agent. His voluntary participation in the earnings of the vessel, before and after the demand, was an assertion of his title, and an acknowledgment of the authority of the master to manage the vessel as his agent. His bill of sale, his possession through the master, his receiving the earnings, as-

Chamberlain *v.* Black.

sertion of title, and refusal to surrender the vessel when demanded, make out a case of conversion, and entitle the plaintiff to maintain this action.

The plaintiff was mortgagee of the vessel, and out of possession. The defendant was assignee of the mortgager and in possession through his assignee. It is a familiar principle that the mortgagee of a vessel out of possession, is not liable for repairs, unless made by his authority. If the mortgager in possession, or his assignee, would indemnify himself for repairs made, or paid for by him, he must either obtain authority from the mortgagee or reimburse himself out of the vessel's earnings. If the defendant has not done either, it may be his misfortune, but it furnishes no ground of claim against the plaintiff. *Winslow* v. *Tarbox*, 18 Maine, 132.

According to the agreement of the parties, the defendant must be defaulted, and judgment rendered for the plaintiff for the amount of his note secured by the mortgage.

APPLETON, C. J., CUTTING, KENT, BARROWS and DANFORTH, JJ., concurred.

———◆———

JAMES H. CHAMBERLAIN & *al.*, *versus* GEORGE N. BLACK.

The respondent contracted in writing to convey to the complainant certain land, provided the latter should pay to the former a certain note, (dated Dec. 20, 1864, and payable in one year with interest,) "according to its tenor and date." On the 20th December, 1865, the complainant tendered the amount of the note to and demanded a deed of the respondent, who, without making any objection to the tender, replied he would never deliver a deed according to the terms of the contract, but would give one with a certain reservation, if the complainant would receive it in fulfilment of the contract. In a bill in equity to compel specific performance; *Held,* — that the tender was waived; and whether the parties, by the language in their contract, intended the money should be payable at the end of the year or three days later, *quere.*

DANFORTH, J. — This is a bill in equity in which the specific performance of a contract is prayed for, also damages for a breach of the same contract. As it comes up on a demurrer the only question is whether the allegations in the bill are sufficient to entitle the plaintiffs to any decree in their behalf. By the contract, as set out, the plaintiffs are entitled to the conveyance of certain land described, on condition that they pay two notes described "according to their respective tenor and date." One of them was paid on demand and no question is raised as to that one. The other was payable in one year from date; and, at the end of the year, the amount was tendered to the defendant. The objection is now raised that the tender was premature and should not have been made till the last of the three days of grace. It is true that the note was not payable until three days later, and perhaps a tender of the amount due before the last day of grace might not discharge it. But in this case we are to look at the contract itself to ascertain the time when the money is due, and upon such a contract no days of grace are allowed. It is true that the notes are to be paid before the defendant is under any obligation to convey, but it is also true that they are to be paid according to their "tenor and date." Legally, the tenor of an instrument means its exact language. Now by the language of the note it became payable at the end of the year, and the days of grace are added, not by the words or terms of the note, but by the law. But whether the parties, by the language used in the contract, intended that the money should be payable at the end of the year, or three days later, may perhaps be doubtful, and we deem it immaterial. Time is not of the essence of the contract. *Jones* v. *Robbins*, 29 Maine, 351.

There is no suggestion that the plaintiffs were in fault in making the tender when they did. It was not neglect on their part and there is no indication that they intended to, or could by so doing, obtain any improper advantage. Nor does it appear that the defendant has suffered any damage

*Rowe & Appleton,* for the complainants.

*J. A. Peters,* for the respondent.