## Case No. 5,652.

### The GRACE GREENWOOD.

[2 Biss. 131.] 1

District Court, N. D. Illinois. April, 1869.

MARITIME LIENS — DISTRIBUTION OF PROCEEDS—
MORTGAGE—RECORDING—PRIORITY.

1. In the distribution of proceeds after the sale of a vessel under a decree of this court, parties having liens under state laws are entitled to payment in preference to the owner.

2. The meaning of the first section of the act of July 29, 1850 [9 Stat. 440], is that any mortgage upon a vessel, recorded as therein prescribed shall take effect and be binding upon all parties.

[Cited in The Illinois, Case No. 7,005; The E. A. Barnard, 2 Fed. 722; The General Burnside, 3 Fed. 230; The Canada, 7 Fed. 733.]

3. Such a mortgage properly recorded becomes a binding security, and material-men claiming liens under state laws are bound to respect it.

4. The mortgage being prior in point of time should be first paid in full from the proceeds.

[Disapproved in The St. Joseph, Case No. 12,- 229. Cited in The Skylark, Id. 12,928; The Favorite, Id. 4,699; The Kate Hinchman, Cases Nos. 7,620 and 7,621; The William T. Graves, Id. 17,758 and 17,759; The Alice Getty, Case No. 193; The Theodore Perry, Id. 13,880; Baldwin v. The Bradish Johnson, Id. 798; The Josephine Spangler, 9 Fed. 775; The Madrid, 40 Fed. 678; The J. E. Rumbell, 148 U. S. 5, 13 Sup. Ct. 502.]

In admiralty. This case was submitted to the court upon the following statement of facts: On the 28th day of December, A. D. 1868, the barque Grace Greenwood was arrested by monition issued out of this court at a suit prosecuted for mariners' wages. On the 22d day of February, A. D. 1869, the barque was sold by the United States marshal, and brought the sum of seven thousand, three hundred and seventy-five dollars. After paying admiralty liens there remained in the registry remnants and surplus. Against these remnants and surplus mortgagees filed a petition claiming the funds by virtue of two mortgages, amounting in all to some three thousand four hundred dollars ($3,400). There were also petitions of material men filed against the same funds. There was not a sufficient sum to pay all. The mortgagees claimed priority over the material men. The mortgages were made and executed in Chicago, where the mortgagees and mortgagors then resided, and were recorded at the office of collector of customs, and nowhere else. The mortgages were due and unpaid. All the petitioners were residents of the state of Illinois, except F. W. Myers, Stephen B. Grummer, E. D. Trotridge, Thomas Adams and Samuel C. Carter. The vessel was owned, enrolled and licensed in the state of Illinois, and registered in Chicago. The claim of Doolittle and Alcott, shipwrights, was for arti-

1 [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

cles furnished on or before April 18, 1868; of the claim of Finny and Lyons, ship chandlers, $861 was furnished prior to April 25, 1868, the balance running up to October, 1868. The mortgages were all recorded before the date of furnishing the supplies. The question submitted was: Whether the mortgagees had priority and preference over the material-men who resided at the time of funishing the supplies in the state of Illinois.

Rae & Mitchell, for petitioners.
Barker & Tuley, for mortgagees.

DRUMMOND, District Judge. The mortgages were made and executed in Chicago, where the mortgagors and mortgagees resided, and were recorded in the office of the collector of customs, but nowhere else. They were all recorded, as I understand, before any of the supplies were furnished, and the controversy arising between the parties is as to the priority of these claims upon the proceeds—whether the material men should be first paid or the mortgagees.

None of these material-men have maritime liens, but as this court and other admiralty courts have decided, although they might not have maritime liens, they could come in and ask for a distribution of the proceeds in preference to the owner; that is to say, before the owner could receive payment of any proceeds remaining in court, those persons who had liens under the state laws, although they might not be of a maritime character, should be paid. The point is whether the mortgagees are in the same position as the owner of the vessel, or whether we are to take up these liens or claims in the order of their date, and direct payment according to their priority.

It is to be observed that, in all these cases, the mortgage is given as a security to the party. The mortgagor ordinarily remains in the possession of the vessel. Through him the various claims arise against the vessel. It is so in the case of the owner where there is no mortgage whatever, and, in such case, it seems equitable that the claims which exist against the vessel, and which arise in consequence of his own act, should be paid before he is, when the vessel is sold and the proceeds remain in court. But it seems to me that the same rule cannot hold in the case of mortgagees. Their equity is just as strong as the equity of the material-men, provided it is not an equity which attaches to the thing itself and becomes paramount, both against the owner and against any one who may have a mortgage or other similar claim upon the vessel.

The attention of the court was directed to the case of Aetna Ins. Co. v. Aldrich, 26 N. Y. 92, which seems to proceed upon the ground that the act of congress of July 29, 1850, providing for the conveyances of vessels and for other purposes, is not operative as against the creditors of the vessel, where

the mortgage has not been recorded in conformity with the law of the state.[2]

But it would seem to follow, as a necessary consequence, from the power of congress over this species of property, that it could provide for the sale and disposition of it, and for encumbering it, and could declare what would be the effect of a bill of sale, or of a mortgage, hypothecation or conveyance. Otherwise, of course, there would be no meaning in this subsisting right of congress, neither would there be any in the act of congress in relation to the mortgage or hypothecation of vessels.

As I understand from the first section of the act of July 29, 1850,[3] declaring "that no bill of sale, mortgage, hypothecation or conveyance of any vessel or part of any vessel of the United States shall be valid against any person other than the grantor or mortgagor, his heirs and devisees, and persons having actual notice thereof, unless such bill of sale, mortgage, hypothecation or conveyance be recorded in the office of the collector of customs, where such a vessel is registered or enrolled," it seems that if a mortgage is made and so recorded, it shall take effect and be binding as to other parties. Of course, a mortgage as between the mortgagor and the parties connected with him, and parties having actual notice, would be good; but this law declares that it shall not only be good as to them, but as to other parties, and there can be no object whatever in requiring it to be recorded at all, unless it was for the purpose of giving it effect. So it seems to me, the mortgagors and mortgagees living in Chicago, and the res, the property, being here, and the mortgage being executed and recorded here with the collector of the port of Chicago, this must give it effect as a valid, binding security upon the property, and one which the claims of the material-men, under the state law, and presented as these are, cannot supersede or override.

In this case these material-men have not made their liens available under the state law. They have only declared that if the barque had remained in its original form, unaffected by the proceedings in this court, they could have attached it under the state law, and made their claims effectual against the barque. They come here now and ask that the proceeds shall be treated as the barque itself.

The question is whether in so treating it we are to postpone other subsisting liens upon the vessel, such as these mortgages would be, and such as they were. I think not. It seems to me that we must take up, in their proper order, these claims or liens upon the vessel. Admit that these material-men have a valid claim upon the proceeds, it is no

stronger than that of the mortgagees, and inasmuch as theirs is prior in point of time, it is not in fact so strong, and must yield to the claim of the mortgagees, upon the principle that that which is first in time is stronger in right. In this case I shall direct a distribution to be made in conformity with that principle, the mortgagees to be first paid.

NOTE. This is believed to be the first case giving the mortgagee's lien a preference over domestic material-men, the practice having been previously the other way. Reeder v. George's Creek [Case No. 11,654]; 2 Pars. Shipp. & Adm. 149, and notes; also, Francis v. The Harrison [Id. 5,035]. A similar question soon afterwards arose in the Northern district of Ohio,—Scott's Case [Id. 12,517],—where it is held that a statutory lien for supplies cannot relate back, so as to take priority over a mortgage recorded prior to the creation of such lien. The Illinois supreme court follows this case of The Grace Greenwood, The Great West No. 2 [57 Ill. 168], and The Hilton [62 Ill. 230], both recently decided, and to appear in 57th or 58th Illinois. The New York court of appeals holds that the statutes of that state for the enforcement of liens against boats and vessels, are unconstitutional and void. In re Josephine, 39 N. Y. 19; Sheppard v. Steele, 43 N. Y. 52; Brookman v. Hamill, Id. 558; Vose v. Cockcroft, 44 N. Y. 415. If a vessel be sold and the proceeds brought into court, a mortgagee may apply by petition for his distributive share of the proceeds. Schuchardt v. The Angelique, 19 How. [60 U. S.] 239. Mortgagee entitled to payment as against owner. Remnants in Court [Case No. 11,697]. Surplus distributed among lien-creditors. Brackett v. The Hercules [Id. 1,762]. Creditors who could not sustain an original action in rem may be paid out of surplus in court. The Boston [Id. 1,669]; Harper v. The New Brig [Id. 6,090]. Though barred by lapse of time. The Stephen Allen [Id. 13,361]. Mortgagees are to be paid in priority to material-men, who, at the time of supplying materials, are not in such actual possession of the ship as to give them a possessory lien. The Scio, L. R. 1 Adm. & Ecc. 353. By the admiralty law all maritime claims upon a vessel extend equally to proceeds arising from its sale, and are to be satisfied out of them. The Siren, 7 Wall. [74 U. S.] 152. Consult, also, The Skylark [Case No. 12,928]; The Lady Franklin [Id. 7,983]. A claimant for materials or repairs furnished to a vessel in her home port is not entitled to share in the proceeds arising from sale of the vessel in admiralty, as against a mortgagee or assignee in bankruptcy. The Edith [Id. 4,282]. Since the above decisions, the amendment of May 6th, 1872, to the 12th rule of admiralty gives material-men the right to proceed in rem against the ship and freight, but its effect upon conflicting claims has not yet been passed upon by the courts.

---

[2] Taken by writ of error to the U. S. supreme court, and overruled. Aldrich v. Aetna Co., 8 Wall. [75 U. S.] 491.

