ALICE, The.
[See The A. G. Brooks, Case No. 98.]

---

ALICE v. MORTE.
[See Case No. 198.]

---

## Case No. 193.
### The ALICE GETTY.

[2 Flip. 18;[1] 9 Chi. Leg. News, 315; 4 N. Y. Wkly. Dig. 471; 23 Int. Rev. Rec. 203.]

District Court, W. D. Michigan. April 9, 1877.

PRIORITY OF LIENS—MARITIME OR STATE LIENS TO BE PAID BEFORE MORTGAGE LIENS, WHERE BY GENERAL MARITIME OR LOCAL LAW A LIEN IS GIVEN.

A mortgage lien upon a vessel has no priority over maritime claims of any class for which either the state or maritime law gives a lien, but is postponed to those liens.

[Cited in The Theodore Perry, Case No. 13,-879; The Bradich Johnson, Id. 1,770; The

---

[1] [Reported by William Searcy Flippin, Esq., and here reprinted by permission. 4 N. Y. Wkly. Dig. 471, contains partial report only.]

General Burnside, 3 Fed. Rep. 230; The City of Tawas. Id. 174. Followed in The Illinois, Case No. 7,005; The J. E. Rumbell, 13 Sup. Ct. Rep. 502, 148 U. S. 1.]

In admiralty.

F. W. Cook, for Miller.

WITHEY, District Judge. Exceptions to the clerk's report as to the order in which creditors of the "Getty" are entitled to be paid out of the proceeds have been filed, and present questions which, in part at least, were passed upon by this court in The St. Joseph Case, [Case No. 12,229.] The tug belongs at Muskegon, in this state, and most of the libels are for supplies, repairs, etc., furnished in Michigan. She was accustomed to take tows across the lake, and there is one libel for supplies furnished in Chicago, besides several for seamen's wages. The original libellant's claim is for necessaries furnished the tug in Michigan. For this claim a decree was obtained and the tug sold. A number of intervening libels were filed before sale, and a number of creditors asserted their liens after sale upon the proceeds. Besides these, Rogers petitioned to have the proceeds applied upon two mortgage liens. The filing of his mortgages in the custom house antedated nearly all the other lien claims. The clerk's report gives priority to the strictly maritime liens, viz.: seamen's wages and the claims for supplies furnished out of the state. After satisfying these and the costs there is a surplus. Then preference is given to liens under the state law asserted before sale of the tug. There is still a surplus, and this is given to the mortgage claims to the exclusion of domestic liens after sale against the proceeds. These latter creditors except to the report because they are postponed to the mortgage creditor, and the mortgage creditor excepts to the report because his lien is postponed to those domestic liens which were asserted by intervening libels before sale. Rogers, the mortgagee, insists that he is entitled to rank next to those liens established for seamen's wages and the foreign creditors.

The court held in the St. Joseph case that the mortgage liens do not have priority over maritime claims of any class for which either the maritime law or the state law gives a lien. We have repeatedly affirmed that view, and so far as we are advised neither the circuit court of this circuit nor the supreme court has held a contrary rule to govern as to priorities. In the northern district of Illinois it was decided that a mortgage lien outranked domestic liens. 2 Biss. 131, [The Grace Greenwood, Case No. 5,652;] 6 Biss. 367, [The Kate Hinchman, Case No. 7,620.] In the last named case, (6 Biss., [Case No. 7,620,]) it seems to have been the opinion of the learned district judge that The Lottawanna, 21 Wall. [88 U. S.] 558, had settled this question in favor of the priority of a mortgage lien over those liens created

by state laws, but this we think is a misapprehension as to what was there decided. We do not know what bearing the Illinois statute may have had in determining the priorities in the cases in the district court of Illinois, if any. The Michigan statute giving the lien on domestic vessels, fixed their priorities over mortgage liens, sections 6678, 6679. If the state may give the lien, we do not see why it may not fix the rank as between the several domestic and mortgage lien creditors. But we are of opinion that if the statute be silent on the subject, the principles of the maritime law would postpone mortgage liens to all maritime claims where by the general maritime law or by the local law a lien is given. It would not be claimed that a purchaser of a vessel could successfully assert a claim to proceeds against either class of maritime claims. Viewed in the proper light, a mortgagee is a purchaser subject to a condition, the performance of which condition by the mortgageor will defeat the mortgagee's title. Now, nothing is better settled than that a mortgage on a vessel creates no maritime claim; on the contrary, the mortgage represents an ordinary debt to which we attach no maritime rights whatever, and can no more be enforced in admiralty courts than can a judgment or execution lien in favor of a creditor, who has, through proceedings in a state court, levied on the vessel. The mortgage gives a lien and so does the levy, but neither can operate to deprive maritime claims, for which the local or maritime law gives a lien, of superior rank and claim to priority, and this rests upon that measure of public policy in favor of those who supply vessels with necessary things to enable them to proceed on their voyage, without which marine commerce could hardly be sustained, and because the supplies are supposed to be to the advantage of both owners and creditors of the vessel.

The only standing a mortgagee can obtain in a proceeding in admiralty is against the remnant in the registry, and this only by petition under the 43d admiralty rule. We understand the Lottawanna Case to have settled nothing on the question whether a mortgage lien outranks a lien for supplies given by the local law. In that case it was held that liens asserted under the law of Louisiana had never been perfected and therefore had no standing before the court; this left the mortgagees at liberty under the 43d admiralty rule to come forward and claim what was left of the remnant in the registry of the court as against the owner of the boat. We regard that case as supporting in very many points what we have said. If a mortgagee wishes to avoid claims arising against the mortgaged vessel, he should take possession and avoid debts, but if he lets her sail, he understands the necessity which may arise for supplies and repairs on the credit of the ship, and he can no more defeat those debts

by asserting his mortgage than could a purchaser. He is benefited by any repairs and may be by ordinary supplies, which enable the ship to proceed on her voyage and thus save her freight. We entertain no doubt upon the subject, and sustain the exceptions by those having liens under the state law, whose libels were filed subsequent to the sale of the vessel, and direct that the decree be entered so as to give them priority over the mortgaged liens. We overrule the exceptions filed by Rogers, the mortgagee.