## The General Burnside.

*(Circuit Court, E. D. Michigan.* ——, 1880.)

1. CLASSIFICATION OF CLAIMS—DOMESTIC AND FOREIGN MATERIAL MEN.— Claims of domestic material men, for supplies furnished under the state law, are entitled to stand upon an equal footing and be paid *pro rata* with the claims of foreign material men. Per *Baxter*, C. J., reversing the opinion of *Brown*, D. J.

In Admiralty.

On exceptions to the commissioner's report of the classifition of claims.

It was referred to the clerk of this court, as commissioner, to classify the claims and report the order in which they should be paid. By the report made in compliance with this order it appeared that certain claims for repairs and supplies furnished in Canadian ports were placed in the second class, before other claims for like repairs and supplies furnished at Detroit and other places in Michigan, which were placed in the third class. The Burnside was owned in Detroit, and was therefore a domestic vessel, as to all claims in the third class. Exceptions were taken by the Detroit Dry Dock Company upon the ground that all material men, whether foreign or domestic, should be ranked alike.

*John J. Speed* and *Geo. E. Holiday,* for the exceptors.

*J. J. Atkinson, contra.*

BROWN, D. J. The sole question presented by the exceptions is whether claims for necessaries furnished in foreign ports are entitled to be paid in preference to those furnished in a

port of the state where the vessel is owned, for which a lien is given only by the state law, or whether they should share alike and be paid *pro rata*. The gist of the argument contained in the very elaborate brief of Mr. Speed is to the effect that while there is no lien by the general law maritime as administered in this country, for necessaries furnished in the home port, such lien may be created by the state law, and when so created is not only enforceable in this court, as laid down in the case of *The Lotawanna*, 21 Wall. 558, but becomes to all intents and purposes a maritime lien of equal rank with those existing in favor of foreign creditors. The last inference, however, does not necessarily follow. In determining the relative rank of different liens, courts are constantly in the habit of examining their character, and the time and circumstances under which they accrued, marshalling them in the order of their merit. I think there is a well-founded distinction between liens created at home and abroad, in the presumed necessity for credit in a foreign port, which does not exist in the domicile of the owner. This necessity of credit is recognized in the law maritime, but not in the state legislation, which confers the lien whenever the supplies are furnished, whether it be necessary to pledge the credit of the vessel or not; at least, such is the general construction given to the state statutes. 2 Pars. on Shipping, 154; *The Young Sam*, 20 Law Rep. 608.

Now, if foreign and domestic material men are put upon the same footing, the former, who furnish upon the credit of the vessel, really labor under a disadvantage, since the proceeds, which would otherwise be used to pay them, are absorbed by the home creditors, who, in reality, trusted to the credit of the owner; and as it is not every state which confers these liens it would be necessary for the foreign creditor, in order to protect himself, not only to inquire where the vessel is owned, but how far the laws of the owner's domicile put him at the mercy of domestic creditors.

This is substantially the line of argument adopted by Judge Leavitt in the case of *The Superior*, (Newberry, 176–184,) where the question at issue here was discussed. Although at that

time the lien created by the Ohio statute did not attach until seizure, the decision was not put upon that ground; but the rule was broadly laid down that in distributing the proceeds of sale maritime liens would be preferred to those created by the state law. "I am not aware that it has been anywhere admitted that state legislation can interfere with, supersede, or destroy a right or lien previously acquired under the national maritime law. On the contrary, the existence of such a power in the states has been strongly denied. They may declare that a lien shall exist in cases designated, and provide for its enforcement by a seizure *in rem*; but, clearly, the lien so acquired must be subordinate to those existing before in favor of other parties."

This decision has been followed, so far as I know, throughout this circuit. Reported cases are rare, but they are uniform. The principle was acquiesced in by court and counsel in *The St. Joseph*, (Brown's Admiralty, 202,) and in the recent case, decided by the same judge, of *The Alice Getty*. In the still later case of *The John T. Moore*, in the circuit court for the district of Louisiana, Judge Woods held that, even if the state liens were recorded pursuant to the statute, they must be postponed to maritime liens. In *Scott's Case*, (1 Abb. U. S. 336,) the relative priority of mortgages and material men in the home port was elaborately argued, but no question was made that foreign material men were entitled to be preferred to mortgagees. The court observes, in speaking of maritime liens: "There was no question as to the validity and priority of these liens, and under former orders of the court they have been paid." Indeed, in all the cases where the mortgagee has been held to rank lien holders under the state laws it has, apparently, been assumed that the decision would be different if the contract were between a mortgagee and foreign creditors. In *The Grace Greenwood*, 2 Biss. 131, the admiralty liens were paid before the contest was made. I had occasion to consider these authorities in the case of *The Theodore Derry*, in which I held that the mortgagees stood only in the place of owners to the amount of their mortgage, and that domestic material men were entitled to rank them.

The only adjudication claimed by counsel for domestic creditors to be directly in their favor is that of *The Cannon Raleigh and Astoria,* recently decided in the district of Virginia. On a careful perusal of this case I do not find this question to have been passed upon, though there are intimations, as in other cases, that the liens of the state laws are of equal validity with strictly maritime liens. The learned judge did say that these liens took precedence of all liens, other than those for mariners' wages, but the question was not between foreign and domestic creditors, but between material men and a mortgagee, and the court adopted what I have considered the better law, that such liens were entitled to rank a mortgage; following *Keeder* v. *Steam-ship Gurgis Creek,* 3 Am. Law Reg. 236. I am informed, too, that the practice of the clerks in many of the eastern districts, in the distribution of proceeds, is to place domestic and foreign material men in the same rank; but if this practice, unsanctioned by judicial authority, is entitled to any weight in other districts, it is fairly offset by the uniform practice in this district, ever since the organization of the court, to prefer the claims of foreign creditors.

It is not denied that the application of this rule will lead to apparent injustice in certain cases where the foreign port is much nearer the domicile of the owner than many ports in his own state, which, under the law as settled by the supreme court, must be considered as home ports; as, for example, in holding Jersey City to be a foreign port to a New York vessel, while Buffalo and Ogdensburg are domestic, or in regarding Toledo and Windsor as foreign to Detroit, while Ontonagon and St. Joseph are domestic. This difficulty, however, has arisen from the practice of treating any port in the same state as a home port. Indeed, the use of the term home port is unfortunate and misleading. The true distinction is between foreign and domestic vessels, the uniform current of American authorities holding each state in this regard foreign to every other. *The General Smith,* 4 Wheat. 438; *The Belfast,* 7 Wall. 624–43; *The Nestor,* 1 Sum. 73; *The Lulu,* 10 Wall. 192–200; *The Rich,* 1 Cliff. 308. This distinction, adopted from the

admiralty law of England, where the line between foreign and domestic commerce is of course clearly marked, is founded in no good reason here, since nearly all the domestic commerce, properly speaking, of this country is between different states, and therefore legally foreign to each other. Taking into consideration the national character of our interstate commerce, it seems to me that either all vessels of the United States should be considered domestic, or, if the words "home port" were used, that only the actual domicile of the owner should be considered the home port, and every other port, either in the same or another state, should be considered foreign. The latter view was actually adopted by the learned judge for the district of Oregon in the case of *The Favorite,* 7 Chicago Legal News, 395, but was criticised by Judge Dillon in *The Albany,* 4 Cent. Law Jour. 16. In view of the settled course of decisions upon this point, I cannot but regard *The Favorite* as a departure from the hitherto accepted law, and so far unsound, but I regard it as extremely unfortunate that the line between foreign and domestic creditors was drawn exactly as it is. As an enunciation of what the law ought to be I fully coincide in the opinion of Judge Deady.

But with regard to the main question in this case, viz., the preferential character of foreign material men, it seems to me too well settled, both in practice and upon authority, to be now disturbed.

The exceptions are, therefore, overruled.

---

On appeal to the circuit court the following opinion was delivered by—

BAXTER, C. J.: This case presents a question which has frequently arisen in the admiralty courts of the lake districts, as well as at other points. This was a Michigan vessel, owned in Detroit. Upon the sale it did not realize enough to pay all the liens existing in favor of the material men here, and the foreign creditors—I mean foreign in the view of the admiralty law—are claiming precedence over the

Michigan creditors, upon the ground that their claims are foreign, while the Michigan claims are domestic.

I find, on examination, that in every commercial country excepting the United States this distinction between foreign and home liens has been entirely ignored; that it does not exist anywhere else, and that it does not exist in the United States as it does in England, and that it exists here only in a modified form. Various reasons have been given for drawing a distinction between a home port and a foreign port in the English admiralty law. It is supposed by some that the distinction is founded upon the fact that the owner of the vessel is presumed to have credit in his own port, and that, therefore, the credit is given to the owner and not to the vessel. But the true reason, I think, is very plain, and grew out of the contest that was waged for a long time between the admiralty and common-law jurisdictions of England, in which the common-law courts prevailed, and settled and determined all cases of admiralty jurisdiction, unless the question arose with reference to matters which occurred upon the high seas, asserting that no maritime liens could attach except upon the high seas, as they were not maritime transactions. When our own courts began the administration of the admiralty law they departed from this practice and adopted the opposite doctrine, asserting the admiralty jurisdiction upon all waters, including the interior navigable rivers and lakes, disregarding the criterion of tide-water, etc.; and, if I may be permitted to say so, necessarily, and, I think, upon principle, placed themselves in a position which should have induced them to adopt the theories of other commercial countries, which ignored distinctions made between home and foreign ports. Our commercial marine is a national affair. It is made so by the constitution. Exclusive jurisdiction in admiralty is given to the federal courts, and it ought to be treated as a national affair and delocalized. But we have fallen into a kind of mongrel system, between the civil and English admiralty practice, and have adopted the idea that a vessel, owned and registered in one state, is as to another state a foreign vessel, and have given to our commercial

marine a double character, national in one respect and local in another.

I am aware of the fact that many decisions have been made in cases of this kind, upon the precise question upon which I have to pass, to the effect that the lien of a creditor from another state is entitled to preference over the lien of the home creditor. It has been well determined by the supreme court of the United States, and by all the courts, that under the general admiralty law—following the English law in that respect—there is no lien for supplies furnished in a home port. But the court has stated that it is competent for the states to legislate and give a lien; and the states of Ohio and Michigan have so legislated, and have given that lien. The supreme court has decided, further, that this lien can only be enforced through the federal tribunals.

There are different grades attached to admiralty liens. A material man is always ranked by a salvor or by a seaman; but the creditors who are protesting here, as I understand the facts, are claiming for supplies furnished, and the question is whether a state can give a lien, and if in point of fact the states have given a lien. If they have, that lien, under the decision of the supreme court, can only be enforced through the federal court, exercising its admiralty jurisdiction. And the question is, is there any reason left for drawing a distinction between these classes of claimants, giving the preference to one who has acquired a lien under the general admiralty law, over one who has acquired a valid lien under the state law? The weight of authority—that is, the greater number of decisions that have been made upon this question—is decidedly in favor of the decree rendered by the district court. There are decisions, however, the other way. This particular question has never been decided by the supreme court. The doctrine which had been established by the majority of the adjudications of the minor courts would, in my judgment, lead to a good deal of injustice, conflict, and confusion. Sitting as a federal judge in the state of Michigan, administering law for the citizens of Michigan, it would seem to be the first duty of the court, if it made any distinctions, to take

care of the rights of its own citizens as against foreign citizens. The rule that has found its way into the books, and which has been sustained by quite a number of able and respectable jurists, is, in effect, that in a conflict between a material man in Windsor, across the river, and a material man in the state of Michigan, in the city of Detroit, this court would be bound to exclude its own citizens for the benefit of the citizens living across the river. The confusion and conflict that would arise in the frequent passage of vessels up and down these waters can readily be imagined.

The courts of the United States have made some innovations in order to adapt the admiralty laws to the exigencies of our situation to inland navigation; and, if there were decisions by the supreme court of the United States upon this question, I should, of course, adhere to them, and so administer the law; but as there are none, though there are conflicting cases in the minor courts, and I think the majority are in favor of the decree of the district court, the same ruling having been made by the learned judge of the western district, by Judge Drummond of Chicago, and by Judge Sherman of Cleveland, yet these are decisions reached by subordinate tribunals, reasoning from analogy, and I do not know but they have gone so far as to be obligatory upon other judges. In this particular case, however, I hold that I am at liberty to look to and decide upon first principles, considering the question as an open one. In administering the law upon this question I have determined to mete out equal justice to every one, and to recognize the claims which the laws of the state give to parties. It cannot be said that when a law of Michigan confers upon or invests a party with a good and valid lien, that that lien, thus created, cannot assume an equality of right with liens arising by implication of law. If I should make a mistake in thus holding, it will not affect a great deal in this particular case, and perhaps the decision may attract some attention from congress, inducing some legislation reconciling this conflict and establishing a uniform national code. I think a point has been reached where we can only get out of these numerous difficulties, originating, I

think, in an erroneous holding in the beginning of our government, by congressional legislation.

Acting upon these views I will direct an order to be entered reversing the decree of the court below, and distributing the proceeds *pro rata* among the parties.

NOTE.—See *The Brig E. A. Barnard*, 2 FED. REP. 712.