Boehme *v.* Rall.

REINHARD BOEHME, receiver,

*v.*

HENRY WILLIAM RALL et al.

1. Where a foreign manufacturing corporation removes to New Jersey, and executes a chattel and real estate mortgage on property within the state to resident creditors to secure the payment of debts contracted and payable there, which mortgage is valid in New Jersey, and under the particular statute of such foreign state under which the corporation was created, such mortgage will not be held invalid because the execution thereof was contrary to a general statute of such foreign state inhibiting such corporations from transferring their property to stockholders, officers or creditors thereof, in contemplation of insolvency.

2. Where, in an action by a receiver of such corporation to set aside the mortgage, such foreign statute inhibiting such transfers is imperfectly pleaded in the bill, complainant will be granted leave, on request made during the trial, to amend his bill by properly pleading such statute, so as to render the latter admissible in evidence.

3. The question of the allowance of such amendment is not governed by the rule that the court will not grant a favor to the defendant by way of

extending time to plead, or to answer or amend the same, where he is in default, except on terms that he shall not interpose a plea of a mere statutory bar which does not reach the merits of the case, and which is termed unconscionable.

On bill, answer, replication and proofs in open court.

*Mr. Edward Russ*, for the complainant.

*Mr. Eugene Stevenson*, for the defendants.

GREEN, V. C.

On the application of Albert Strall, a stockholder and creditor, as well as president of the New York Silk Ribbon Manufacturing Company, said company was declared insolvent, and, by an order of this court, the complainant was appointed its receiver on November 10th, 1890. He qualified as such, and took possession of the real and personal property of the corporation. The real estate is situated at Haledon, Passaic county, New Jersey. The personal property in question consists of machinery, stock and manufactured goods in the factory at that place.

The receiver discovered, by an examination in the office of the clerk of Passaic county, the records of two real estate mortgages and one chattel mortgage executed by the company, the validity of which he does not question, and also a mortgage dated November 1st, 1890, executed by the said company to Henry William Rall and William Deuster as trustees for certain creditors, covering real and personal property, which he claims is invalid, and files this bill to set it aside.

This mortgage, after reciting that whereas the New York Silk Ribbon Manufacturing Company is justly indebted to certain named creditors in the respective amounts stated, aggregating the sum of $7,554, without interest, and for which debts the creditors held the promissory notes of said company, payable on demand, witnessed that the company, for better securing the payment of said sums of money to the said creditors with the interest thereon, did grant, bargain, sell &c. the premises de-

scribed and the goods and chattels specified, to the said trustees, to have and to hold the tract of land and premises therein granted with the appurtenances unto the said trustees, their heirs and assigns, and to have and to hold the goods and chattels therein bargained and sold unto the said trustees aforesaid, their executors, administrators or assigns forever, in trust, however, to secure the above-mentioned debts to the therein-named creditors respectively, with the condition that if the said creditors should be paid the sums due them, then said instrument to be void, with other provisions anticipating the maturing of the obligation.

The New York Silk Ribbon Manufacturing Company was organized on the 12th of March, 1887, under the law of the State of New York entitled "An act to authorize the formation of corporations for mining, manufacturing, mechanical or chemical purposes," passed February 17th, 1848, and of the several acts extending and amending said act.

By its certificate it appears that the object for which the company was to be formed was the manufacture of silk ribbon and all other silk goods; that the amount of the capital stock of the company was to be $25,000, the term of its existence twenty-five years, the par value of the said stock $100 per share, the number of trustees to manage the company nine, and that the operations of the company were to be carried on at the city of New York.

The company was what is known as a co-operative corporation, none but operatives in the business being permitted to be stockholders or officers, and none but stockholders being employed as operatives. After carrying on manufacturing for some time in the city of New York, it was deemed advisable to remove to the State of New Jersey, and on or about the 16th day of September, 1889, the corporation removed its plant, machinery and stock to the village of Haledon, Passaic county, in this state, having purchased real estate and established its factory at that place; at the same time it ceased to carry on any manufacturing or other business in the State of New York, and thereafter conducted all its business operations, including the

manufacture and consignment of goods, in New Jersey, holding all its trustee and formal stockholders' meetings there.

By an amended certificate, dated September 16th, 1889, and filed in the office of the clerk of the county of New York, it was declared that

" at a meeting of the stockholders of the company, regularly called, by vote of the stockholders representing two-thirds of the stock of said company, it was resolved to carry on some part of the business of said company (heretofore carried on only in the city and county of New York) outside of the State of New York, to wit, at Haledon, in the township of Manchester, in the county of Passaic and State of New Jersey."

The New York office was abandoned, but manufactured goods were consigned for sale to a commission-house in that city. While the company was in operation in New Jersey, and in want of funds, money for the purpose of carrying on operations was advanced by the officers and stockholders, to whom from time to time the notes of the company were given for the money so advanced to the company. After continuing operations here for some time it was found impossible to succeed, and the impending insolvency of the company was recognized. It appears that a certificate, dated November 1st, 1890, was filed in the clerk's office of the county of New York, which was signed by various persons as stockholders of the said company, who.claimed therein to constitute a majority of all the stockholders of the company, and to hold more than two-thirds of the capital stock thereof. By it their assent was given to the execution and delivery of a mortgage covering not only the factory property situated in the township of Manchester, in the county of Passaic, which was conveyed to the company by William Bushman, by deed dated January 17th, 1889, but also the goods and chattels of said corporation on said land, for the purpose of securing the indebtedness above mentioned, amounting in the aggregate to $7,454, with interest thereon. The debts to be secured were contracted and payable in New Jersey; the property intended to be mortgaged was in this state, and the trustees and creditors intended to be secured thereby, thirty-two in number, were residents thereof, except seven or eight who resided in New York.

Boehme *v.* Rall.

It is admitted, by conceding the validity of the first three mortgages, that by the laws of the State of New York a solvent corporation of this character was authorized to mortgage its property, but it is claimed that this authority did not pertain to this corporation in consequence of its anticipated insolvency at the time the mortgage attacked was given.

It is conceded that this mortgage does not contravene the provisions of the laws of the State of New Jersey. *Wilkinson* v. *Bauerle, 14 Stew. Eq. 635; Vail* v. *Jamieson, 14 Stew. Eq. 648; Bergen* v. *Porpoise Co., 15 Stew. Eq. 397.*

The bill alleges that this mortgage is illegal and void on several grounds, all of which were abandoned by counsel for complainant, with the single exception of that which related to its alleged invalidity under the laws of the State of New York.

Upon this point the counsel for complainant relies on *Rev. Stat. N. Y. pt. 1 ch. 18 tit. 4 § 4 (1 Rev. Stat. 603).* *Chapter 18* is entitled " Of incorporations ; " *title 4* is entitled " Special provisions relating to certain corporations," a title inserted pursuant to the act concerning the Revised Statutes, passed December 10th, 1828. *Section 4,* as it stood in 1890, when this mortgage was given, is as follows :

" Whenever any incorporated company shall have refused the payment of any of its notes or other evidences of debt, in specie or lawful money of the United States, it shall not be lawful for such company or any of its officers to assign or transfer any of the property, or choses in action of such company, to any officer or stockholder of such company directly or indirectly for the payment of any debt; and it shall not be lawful to make any transfer or assignment in contemplation of the insolvency of such company to any person or persons whatever; and every such transfer and assignment to such officer, stockholder or other person or in trust for them or their benefit shall be utterly void."

On the trial, counsel for the defendant objected to the admission of this law of New York in evidence, on the ground that the same had not been properly pleaded. The rule undoubtedly is that where a party relies upon the provisions of a foreign statute, either as a ground of relief or as a defence to the action, the substance of the act relied on should be set out. The rule

35

is the same in equity as at law, the reason thereof being that the court cannot take judicial notice of the provisions of a foreign statute, and if invoked it should be so far stated that the court may see that the right or liability which depends exclusively on a statutory enactment arises by force of such statutory provision. *Salt Lake City Bank* v. *Hendrickson, 11 Vr. 52, 55.*

· Counsel for complainant thereupon asked leave to amend his bill by properly pleading this statute. Defendants' counsel objected, on the ground that it was not a proper subject of amendment, that the statute avoided the merits of the case, and that the application should be governed by the same rules which obtain where leave is asked of the court, by a defendant, to amend or plead out of time, viz., that it will not be granted except on terms that he does not interpose pleas of the statute of limitations, or pleas of the statute relating to usury, as a bar to the claim of complainant or plaintiff. The question of the amendment was reserved, the statute being introduced subject to the objection. The rule undoubtedly is that the court will not grant a favor to the defendant by way of extending the time to plead, answer or to amend the same, where he has been in default, except by putting him on terms not to take advantage of certain pleas which are called unconscionable. But here the application is not made by the defendant to interpose a defence to what may be a meritorious action, by interposing a plea of a mere arbitrary bar created by legislative act without reaching the merits of the case, and which is termed and generally, in fact, is an unconscionable defence; but by the complainant, who is an officer of this court, seeking, in discharge of his official duty, to remove an encumbrance on property with which he is invested for the benefit of creditors. Besides, the rule referred to is based on the ground that the party by failing to plead in time, or omitting to plead a statute as a bar, in plea or answer filed, has waived the benefit therein made, and, in order to interpose some defence which he considers essential or desirable, he has to ask a favor of the court, and in extending the favor, the court will do it only on the terms that he shall not act inconsistently with his waiver, and make use of a defence considered

against conscience. In this case there has been no waiver—the counsel has pleaded the New York statute, but has done it imperfectly. It is not unconscionable, for, if the statute applies, the mortgage never had any validity. There is no surprise, for counsel frankly admitted, on the argument, not only that he was not taken by surprise as to the fact that complainant relied on the statute of New York, but that he was also fully advised of the phraseology and operation of the same.

It seems, therefore, a proper case to permit the amendment, and it is accordingly allowed, and the statute of New York is, by amendment, to be properly pleaded.

Is, then, the validity of this mortgage to be governed by the laws of the State of New York, or by the laws of the State of New Jersey? The first does not permit a company, in anticipation of insolvency, to in any way secure its creditors, and the other confessedly does.

It is to be noted, at the outset of this investigation, that the section now relied on is not a part of the law under which the company was organized. That law, it appears, permits corporations or companies incorporated under the act, under certain conditions, to make and execute a mortgage, and under that law, if the company had been solvent, this mortgage would have been perfectly valid. The law invoked is a general one, part of the Revised Statutes regulating all New York corporations, not solvent, and the question raised is as to the extent of its operations. The case as presented is this, Is the power to make a mortgage, given by the act under which the company is incorporated, taken away, in case of insolvency, by another general act regulating the management of corporations in certain cases? Both being statutes of New York, is the latter operative as to a mortgage executed in New Jersey, on property in this state, to secure creditors who are residents of this state, for debts contracted and payable here?

It is to be first remarked that its provisions are contrary to the policy of the law of New Jersey. At one time, the law in this state enacted in the act to prevent frauds by incorporated companies (*Nix. Dig. 505 § 2*), was similar in effect to this law

of the State of New York, but that was changed by the legislation attending the last revision. *Wilkinson* v. *Bauerle, supra.*

It is argued that the company, by abandoning all business in New York and removing all property and manufacture to this state—transferring all its interest and operations from that state to this—has become not only subject to the restrictions and limitations of the local law where it is now situate, but that it has left behind, so far as its powers are concerned, the restrictions and limitations of the local law of the place from which it came, except such restrictions and limitations as are part of the charter under which it was organized. That, being a corporate entity, with power to contract, the exercise of that power in the place in which it is at present situated is regulated only by the local law, and it is sought to bring the case, by analogy, within the rule with reference to married women and others who may be under disabilities in one and not in another jurisdiction. But I think the distinction is clear. All natural persons, citizens of the United States, have, under the constitution, the absolute right of acquiring and holding property and making certain contracts in whatever state they may be. In some jurisdictions the exercise of the right of disposing of property and making certain contracts may be restricted by reason of personal conditions, such as infancy, coverture &c., which do not obtain in others. These, it will be at once observed, are restrictions of a general power, dependent on conditions which attach to the person. Artificial persons or corporations, on the other hand, have no such general powers. The powers which they possess are those which they derive from their charters or those which are incident thereto, to be exercised by *strict right only in the jurisdiction which creates them.* The right of a corporation created in one state to transact corporate business and make contracts in other states, is not an absolute right, but one based upon the law of comity between the states, and that merely enables the corporation to exercise the franchise of acting in its corporate capacity in foreign states. Independent of statutory aid, the law of comity recognizes and permits only the exercise of the business functions of foreign corporations, including the purchase and

sale of property, but is not extended to extraordinary powers and privileges, such as the power to condemn property, to enjoy a monopoly, to be exempt from taxation and the like. Nor will the law of comity extend to a foreign corporation permission to exercise powers or franchises which are contrary to the established policy of the law of the locality, for it would be absurd to permit a foreign corporation to do that which the policy of the law prohibits a domestic corporation from doing.

While no solution of the question is to be deduced by analogy to the rights of natural persons under the constitution, I think the contention of counsel is, in the main, sustained by principle and authority.

The instrument involved is a mortgage of real as well as personal property owned by the company in this state.

Doubt is entertained as to the power of a corporation to hold real estate in a foreign state, and enabling statutes have been passed in many states to establish such right and enlarge the scope of powers otherwise limited. Our own statute, making it lawful for foreign corporations to hold, mortgage, lease and convey such real estate in this state as may be necessary for the purpose of carrying on the business of such incorporation in this state &c., is prefaced by the preamble, " Whereas, doubts have arisen as to whether foreign corporations can hold, mortgage and convey lands in this state." *Rev. 195 § 99.*

Whether the chartered powers of a corporation can be enlarged by the legislature of the foreign state to which it has removed, it is unnecessary to consider in this case, because, both by the law of New Jersey just quoted and the law of New York under which this company is organized, it has the power to mortgage its property; and the point involved is whether the company is hampered in the exercise of that power with reference to its properties in the State of New Jersey by a general law of New York, suspending or taking away such right in the case of the insolvency of a corporation organized under the laws of that state. This inhibition, as has been stated, is no part of the law under which this company is organized. It is contained in a general law of the State of New York relating to corporations. It is elemen-

tary that the general laws of a state have, *per se*, no extra-territorial force. This company brought with it from New York to New Jersey its chartered powers; it did not bring with it the general laws of the State of New York. The law of comity recognizes its right to do business in its corporate capacity in this state. Our statute law confers upon it the power to hold and mortgage real estate; it is the policy of the law of New Jersey that corporations, although insolvency may be impending, may mortgage their property to secure their creditors. To hold that the power of this corporation to mortgage its property in New Jersey, to secure creditors living there, is annulled by the law of New York, would be to hold not only that the general law of that state had extra-territorial force, but that comity required the courts of New Jersey to recognize the law of New York, in violation of the policy of the law of New Jersey.

The authorities make it equally clear.

*2 Morawetz Corp.* § *967:*

" The charter contract alone is recognized. It is the charter alone which is recognized by the law of comity and not the general legislation of the state in which the corporation was formed. The general laws and regulations of a state are intended to govern only within the limits of the state enacting them, and a state would have no power to give them extra-territorial force."

In *White* v. *Howard, 38 Conn. 342,* the Connecticut court sustained a devise of land in Connecticut to a New York corporation, holding that although devises to corporations are forbidden by the statute of wills of the state of New York, this does not prevent a New York corporation from taking the title to the land in Connecticut by the devise.

*Ellsworth* v. *Railroad Company, 98 N. Y. 553,* is an extreme case. In it payment of bonds of the company was resisted on the ground, among others, that they had been originally sold at a price less than that required to be paid by the law of the state which chartered the company.

After considering other questions, Rapallo, J. (at *p. 559*), says: " The defendant, however, takes the further position that the

Boehme *v.* Rall.

proofs upon the part of the defendant showed, not merely that the issue of these bonds was *ultra vires*, but that it was illegal, the sale of them at less than par having been prohibited by the charter. On this branch of the case it is sufficient to say that the contract was in all respects a New York contract; the bonds were issued and sold in the city of New York, and the interest and principal are both payable in that city. There is nothing in the laws of New York which renders the contract illegal, and even if the charter of the defendant (which was granted under the statutes of the States of Illinois and Indiana) should be so construed as to contain prohibitions which would have rendered the contract illegal in those states if made there, they do not have that effect here, except as restrictions upon the power of the corporation or its officers."

Again, the debts secured by the mortgage in question were not only made and are payable in this state, but the mortgaged property is also here. The mortgage embraces both real and personal property. As to the real estate, nothing can be better settled than that land in its devolution, conveyance or encumbrance is subject exclusively to the local law.

*Whart. Confl. L.* § *273* says:

"Jurists of all schools, and courts of all nations, are agreed in holding that land is governed by the law of the place where it is situated." *Section 274:* "So far as concerns England and the United States, real estate, to adopt our distinctive phraseology in all jurisdictions, and by an uninterrupted current of authority, is held to be subject to the *lex rei sitæ*."

And this rule applies as well to mortgages as conveyances.

*Bentley* v. *Whittemore*, 3 *C. E. Gr. 366:* "Whittemore, May 28th, 1857, conveyed and assigned to two of the defendants all his property in trust to sell and collect the same, and out of the proceeds to pay his debts in the order specified. These parties resided in the State of New York; part of the property of the debtor was in this state. The assignment was good under the laws of New York, but was contrary to the law of New Jersey, which prohibited preferences, and so far as it affected lands there was held to be void."

Chancellor Zabriskie says (at *p. 373*): "It is well settled in England, and the states where the common law is in force, that the transfer and descent of real property is governed by the law of the state in which it lies. This rule is without exception, and I am not aware of any case, or any authority, in which it is questioned."

*Goddard* v. *Sawyer, 9 Allen 78*. A mortgage was made in New Hampshire by a resident in that state conveying land in Massachusetts as a security against liabilities subsequently to be created. Under the New Hampshire law such a mortgage was invalid. The Massachusetts court, however, sustained the mortgage. In this case the debt was valid and enforceable under the New Hampshire law; the *lex loci contractus* sustained the obligation. But the New Hampshire law prohibited a mortgage to secure that sort of obligation. The Massachusetts court having to deal with a valid obligation under the law of New Hampshire, enforced its own law in regard to the mortgage of lands in Massachusetts given to secure that obligation.

*Sell* v. *Miller, 11 Ohio St. 331*. By the law of Ohio a married woman, over eighteen years of age, may contract. A mortgage on land in Ohio, executed by a non-resident married woman, over eighteen years but under twenty-one, was held good, although by the law of her domicile she was incapable of contracting.

*Jones Mort.* §§ *656–661*. A mortgage considered as a mere security for a debt is valid or invalid, according to the law of the place which determined the validity or invalidity of the debt (§ *662*), but as to the form and validity to the mortgage deed as a conveyance, the law of the place where the land is situated must always govern.

The debts for which this mortgage was given are admittedly honest and valid under the laws of the State of New York as well as under the laws of New Jersey. Any attack made on them by the bill is withdrawn. They could each and all be recovered in the courts of either state.

The law of its charter having given the company the general power to mortgage, the exercise of that power is subject to the

laws and policy of the state in which it lawfully holds the mortgaged real estate.

Nor does any different rule apply to the chattel mortgage in this case—the contract was made in New Jersey to be performed in New Jersey, and the goods were in this state.

Mr. Justice Depue, in *Marvin Safe Co.* v. *Norton, 19 Vr. 410* (at *p. 415*), says: "When the place where the contract is made is also the place of performance and of the *situs* of the property, the law of that place enters into and becomes part of the contract, and determines the right of the parties to it."

*Whart. Confl. L.* § *317:* "The law in reference to a chattel mortgage is determined by the *situs*," citing *Wattson* v. *Campbell, 38 N. Y. 153; Jones Chat. M.* § *299.*

This being the law, the reasoning with reference to the real estate mortgage will apply to the chattel mortgage.

Again, the part of the New York law which is invoked to invalidate this mortgage is essentially a bankrupt law—it restrains a granted power from being exercised by a corporation when it becomes insolvent—and nothing is now better settled than that bankrupt laws have no extra-territorial force. *Whart. Confl. L.* § *525.* Not only this, but the creditors who are secured by this mortgage upon property situate in New Jersey are citizens of this state. Mr. Justice Paige, in *Hoyt* v. *Thompson's Executors, 5 N. Y. 320* (at *p. 348*), says: "The statutes and laws of a country have no intrinsic extra-territorial force. They bind only its own citizens and citizens of other countries while within its jurisdictional limits, and they bind directly only property within these limits. They do not affect or bind property out of its territory, or persons not resident therein, whether natural-born citizens or others. Whatever extra-territorial force these statutes and laws are permitted to have is the result of the voluntary consent of other nations. This consent is accorded upon the principle of the comity of nations alone, and not from any international obligation to yield the slightest obedience to such statutes and laws. *Story Confl. L.* §§ *7, 8, 18, 20, 22, 23, 28, 38.* But no nation, on any recognized principles of comity, is morally or otherwise bound to enforce foreign laws prejudicial

to its own rights or to the rights of its own subjects. *Story Confl. L.* §§ *244, 512.* Bankrupt and insolvent laws come within this class; they have no extra-territorial force or validity. Their enforcement, in any country other than that in which they were enacted, would be prejudicial to the rights of the citizens of such country. The states of the Union are regarded as foreign to each other, for all purposes not embraced in the constitution of the United States (*Woodhull* v. *Wagner, Bald. 296*), and the bankrupt and insolvent laws of one state have no force or validity in any other state."

I am of opinion that the mortgage attacked is valid and that the bill should be dismissed, with costs.