THOMAS B. WATSON ET AL., RESPONDENTS, v. ANTHONY
F. CAMPBELL, SHERIFF, &c., APPELLANT.

*Personal Property—Mortgagee—Executory Contract—Void Mortgage—Evidence.*

A party in possession of personal property, having an interest therein as
mortgagee, may maintain trespass or replevin therefor against one who wrong-
fully levies thereon and deprives him of such possession, notwithstanding he
has made an executory contract for a sale thereof to another ; the possession
of the Plaintiff and his lien for the price, are sufficient to entitle him to main-
tain the action. It is no defence to such an action that the Plaintiff (being
mortgagee, and entitled by the terms of his mortgage to possession on default of
payment by the mortgagor) obtains the possession by the act of one claimed
to be the joint agent of the mortgagor and mortgagee without the consent
of the former.

The admission of evidence in its nature incompetent, is no sufficient reason
for the reversal of a judgment for the Plaintiff when it is entirely clear that
without that evidence the Plaintiff was entitled to a peremptory instruction to
the jury to find the fact in the Plaintiff's favor which such improper evidence
was offered to prove.

A mortgage made in another State, to secure the payment of money in that
State, upon personal property in that State, and made between parties residing
in that State, if void by the laws of that State, is void here, and must be so
declared.

When, therefore, the Plaintiff in an action of trespass de bonis asportatis re-
lied upon his title to the property as mortgagee under a mortgage made in
Pennsylvania which was not accompanied by a change of the possession of
the property, and it was testified on the trial that, by the law of Pennsylva-
nia, such a mortgage is fraudulent and void, and such evidence is in nowise
contradicted, nor the witness impeached, it is error to charge the jury, per-
emptorily, that the "mortgage is a valid mortgage." Whatever under the
special circumstances the law of New York may be, our Courts cannot assume
to know, judicially, that the rule stated by the witness is subject to qualifica-
tions under which the mortgage might be sustained.

THIS action was brought against the Defendant, who, on the
31st July, 1861, as Sheriff of the county of Kings, had levied an
execution, issued on a judgment against one George R. Ayres,
upon a vessel then in the alleged possession of the Plaintiffs, called
the barque "Florida."

The Plaintiffs, residing in Philadelphia, claimed title and right of possession under a mortgage dated Nov. 30th, 1858, made to the Plaintiffs by the said George R. Ayres, also a resident of Philadelphia, to secure the payment and satisfaction of all acceptances, notes, endorsements, and other obligations, made or incurred by him to the Plaintiffs, and all which might thereafter become due to them, or which might be lent or advanced by them for his account or accommodation. And in case of default at any time in the payment of any one of the debts, notes, acceptances, or obligations, authorizing the Plaintiffs, or their agent or attorney, to take possession of the said barque "Florida," and to sell her at public auction or private sale, to pay what may be due, &c. The vessel remained in the possession of the mortgagor. The transactions between the parties continued until the spring of 1861. In December, 1860, the vessel sailed from the port of New York to Europe and returned, arriving in New York on the 4th, and was reported on the 5th of June, 1861. Meantime, in April and May, 1861, certain of the notes secured by the mortgage became due and were not paid, and the Plaintiffs, receiving information of such arrival, instructed Wilson & Camman, of New York, to take possession thereof for them by virtue of the mortgage sent to Wilson & Camman for that purpose. Wilson & Camman had, on the application of Ayres, who was referred to them by the Plaintiffs, consented to advance money to pay off the ship's crew and other expenses.

On the 7th of June, in pursuance of the Plaintiffs' instructions, Wilson went on board the ship and took possession on behalf of the Plaintiffs, and when her cargo was discharged, she was removed to the Atlantic Docks and a man placed in charge by them for the Plaintiffs. The Plaintiffs proceeded to negotiate for a sale, and made an agreement of sale to the United States, but on the 31st July they had not received payment nor delivered the vessel.

On the last named day the Defendant levied thereon an execution on a judgment confessed by the mortgagor to William Ayres, another resident of Philadelphia, and took possession; and for the taking possession under that execution this action was brought.

It was claimed on the trial that Wilson & Camman were

agents of the mortgagor as well as of the mortgagees, and that they could not, by taking possession and putting a man in charge, give to the Plaintiffs any possession of the vessel.

Also, that the vessel having been sold, the action would not lie in the name of the Plaintiffs.

And especially that the mortgage was absolutely void by the laws of Pennsylvania, because it was not accompanied by the possession of the vessel, and that the mortgagor had never consented to the possession of the Plaintiffs.

To prove the law of Pennsylvania, the Plaintiffs examined Maximilian Goepp, who testified that he is a member of the Pennsylvania bar and acquainted with the law of that State. That transfers of personal property, bills of sale, and chattel mortgages, unaccompanied by a change of possession, "are and, always have been, by the law of Pennsylvania, *fraudulent* and *void.*" That there is no statute in that State on the subject. No other evidence appeared in the case in regard to the law of Pennsylvania.

Some question in regard to the taking of possession was submitted to the jury; but in reference to the claim that the mortgage was void, the Judge instructed the jury in these terms: "Upon the evidence in this case I charge you that the Plaintiffs' mortgage is a valid mortgage."

To this the Defendant excepted.

The Plaintiffs had a verdict and judgment. The judgment being affirmed in the General Term of the Supreme Court in the Second District, the Defendant appealed to this Court.

*Crooke & Bergen* for Appellant.

*J. E. Berry* for Respondents.

WOODRUFF, J.—There is, I think, no serious question in this case, except that which arises from the unqualified charge of the Judge to the jury, that "the Plaintiffs' mortgage is a valid mortgage," and therefore that "the only material question for the jury to determine is, whether the Plaintiffs took possession before the levy."

The Plaintiffs, the mortgagees, and Ayres, the mortgagor, re-

sided in Pennsylvania. The mortgage was there made upon the vessel, registered in Pennsylvania, upon which the Defendant levied. The creditor in the judgment on which the execution was issued, also resided there. Some of the notes which were secured by the mortgage became due and were unpaid. If the mortgage to the Plaintiffs was a valid mortgage, and the Plaintiffs, the mortgagees, were in possession at the time of the levy, then the Plaintiffs were entitled to recover. Those were, in fact, the only questions involved in the controversy.

The jury have found that the Plaintiffs were in possession, and there was evidence to that effect which it was proper to submit to the jury. If, upon the proofs, the Judge was warranted in deciding unqualifiedly that the mortgage was a valid mortgage, the other questions arising on the Defendant's exception, either to the admission or rejection of evidence, or to his charge, are of no moment, or are clearly untenable.

It was not erroneous to refuse to charge that Wilson could not give up the possession of the vessel without the consent of the mortgagor.

The mortgage debt was in part due, the mortgagees (if the mortgage was valid) had a right to take possession without the consent of the mortgagor, and even in spite of his resistance.

There was evidence that Wilson and his partner acted under express instructions of the mortgagees, and took and held possession on their behalf.

Whether their relations to the mortgagor made it their duty to apprise him, does not alter the result if, in fact, they took possession for the mortgagees.

So it was not erroneous to charge that a sale to the Government, not consummated by delivery, did not prevent a recovery by the Plaintiffs. They had possession, and (even though a sale had been agreed upon) a lien for the price, and a duty to perform, that required continued possession. It requires no argument nor citation of authority to show that this entitled them to maintain trespass or replevin in the cepit against a tort-feasor.

If the Defendant had pleaded as a defence, property in the

United States, the cases cited in the appeal might have had some application to the subject (1 Hill, 353; 3 Denio, 244). But even then the possession, with a lien for the price, would sustain the ·Plaintiffs' action. Without such a plea, the evidence was wholly immaterial.

The Plaintiffs offered in evidence a writing signed by the mortgagor, dated after the levy complained of, certifying the existence and non-payment of the notes given by him to the Plaintiffs. The evidence was objected to, and the Defendant excepted to the ruling by which it was allowed to be read.

I do not perceive any ground upon which that paper, made after the Defendant had levied, was admissible as evidence against him.

Ayres, the mortgagor, had been examined as a witness on behalf of the Defendant; he had testified, on the direct examination, to nothing which that paper would contradict; and although he had mentioned the signing of a paper, he had not stated its contents. On cross-examination, he had stated that the paper which he signed included a certain note; and even this the paper did not contradict.

The witness, when on the stand, might have been examined as to every fact contained in the paper, if the Plaintiffs desired. On no ground, therefore, was it competent to read against the Defendant such a paper, made out of Court, after the levy, in no sense so connected with the mortgage as to form a part of the res gestæ, and not being one of the vouchers or securities for the debt for which the mortgage was given.

On the other hand, there was no controversy as to the indebtedness, and that was all which this paper certified. The notes were produced, and the liability of the mortgagor therein was not disputed. With this paper out of the case, the Plaintiffs would have been entitled to a peremptory ruling, that the indebtedness was established. If the allowance of the reading of this paper in evidence be the only ground for reversal, the judgment must be affirmed, for it was wholly immaterial, and could in nowise prejudice the Defendant.

In regard to the validity of the mortgage, and the instruction

given to the jury on that point, I think the Plaintiffs' case greatly embarrassed by the oral testimony produced by the Defendant, and given by Maximilian Goepp, that "by the law of Pennsylvania, chattel mortgages, unaccompanied by a change of possession, are, and always have been, fraudulent and void."

This testimony stands in the case wholly uncontradicted, and yet it does not appear to have been regarded by the Judge at the trial, or by the Supreme Court in General Term, as of the slightest importance.

It is clear that the validity of the mortgage must be determined by the laws of Pennsylvania, where it was made, where the vessel was registered, and where all the parties to the mortgage resided (The Ætna Insurance Co. *v.* Aldrich et al., 26 N. Y. 92); and it appears by the testimony of the same witness that " there is no statute in the State of Pennsylvania on the subject."

The testimony, therefore, is to the effect that a chattel mortgage, *unaccompanied* by a change of possession, is, by the common or unwritten law of Pennsylvania, *fraudulent and void.*

Not merely presumptively fraudulent and void, but unqualifiedly so.

Though given in good faith to secure future advances (which would be a perfectly legal consideration), it is void. Though given in good faith to secure an actual advance of money, it is void.

Though, by the terms of the mortgage, the right of possession did not arise till forfeiture by non-payment of the debt, or some part thereof, it is void.

Though the property, at the time of the execution of the mortgage, be so situated that it cannot be presently delivered, as, for instance, a vessel at sea, still the mortgage is void.

Such, I apprehend, is the import of the testimony of this witness. It leaves to the Plaintiffs no room for explanation, no room to say that the want of immediate change of possession is only presumptive evidence of fraud, as held in many of the States ; no room to say that the mortgagees did, in fact, take possession as soon as the vessel came within the jurisdiction, and even sooner, by pursuing the property to this State; no room to say that the

presumption in case of a mortgage only arises when the debt becomes due (as held in many of the States), and that after forfeiture the Plaintiffs did, in fact, so soon as the vessel returned from sea, take immediate possession.

For be it observed here, that one of the notes secured became due April 15th, another April 24th, and the other two were not yet payable. The vessel left the port of New York for Sicily the previous December, and had not returned when the notes became due, but arrived at the port of New York June 4th, was reported on the 5th, and on the 7th the Plaintiffs took possession. This was not suffering the mortgagor to remain in possession after forfeiture. Both parties lived in Philadelphia, and very few hours were lost, after advice of the ship's return to the United States, if it was at all the duty of the Plaintiffs to pursue the ship beyond the jurisdiction.

And still further, it left no room to say that although, while the possession of the mortgagor continued, the presumption of fraud existed, yet, when the Plaintiffs did in fact take possession, that presumption ceased, and thenceforth (if in truth the mortgage was given in good faith, to secure an actual indebtedness without intent to defraud) the title of the Plaintiffs under the mortgage was unimpeachable (see Eberle v. Mayer, 1 Rawle, 366; Mentz v. Hamman, 5 Whart. 150; Hoofsmith v. Cope, 6 Whart. 53; Born v. Shaw, 29 Penn. State R. 288; Jordan v. Brackenridge, 3 id. 442; McVicker v. May, 3 id. 224).

Our reading has taught us that, upon some of these questions, there is a diversity of decision in the various States; but the law of Pennsylvania is, in this case, declared by the witness, and it stands uncontradicted, and to the effect that this mortgage was fraudulent and void. How, then, could the Court below say, that because the mortgagees took possession before the levy of the execution, or because of any other fact proved, the mortgage was valid.

On this point, I think, the charge was not warranted; what on another trial the law of Pennsylvania may be proved to be, under the somewhat peculiar situation of the mortgaged property—

mortgaged for a debt not due, and not suffered to remain in the possession of the mortgagor after forfeiture—we cannot assume to know.

For the reason stated, the judgment must be reversed, and a new trial ordered, with costs to abide the event.

<div align="right">

JOEL TIFFANY,

State Reporter.