## BATH GASLIGHT CO. v. ROWLAND.

(Supreme Court, Appellate Division, Second Department. June 5, 1903.)

1. JUDGMENT AGAINST SURETY—CONCLUSIVENESS AS TO SURETY.

Code Civ. Proc. § 1937, provides that, after the recovery of a judgment against joint debtors, an action may be maintained by the judgment creditor against one or more of the defendants who were not summoned in the original action. Section 1939 provides that in such an action the defendant's answer is restricted to defenses which he might have made in the original action if summons had been served, when it was first served on a defendant jointly indebted with him, etc. Section 1933 pro-

vides that a judgment against joint debtors is conclusive evidence of the liability of each defendant served, and that, as against a defendant not summoned, it is evidence of the extent of plaintiff's demand after the liability of that defendant has been established by other evidence. In an action against a principal and sureties, one of the sureties was not summoned, but the other surety made a plea that the contract was ultra vires, but was defeated. *Held* not to preclude the surety not summoned from relying on the same defense when subsequently sued, the adjudication in the first action not being res adjudicata thereof.

2. FOREIGN CONTRACT—WHAT LAW GOVERNS—PRESUMPTION.

In an action on a contract made in another state between two corporations of that state engaged in business there, and where the subject-matter of the contract is situated there, it is to be presumed that the parties intended that the laws of that state should control as to its validity and effect.

3. EVIDENCE—LAW OF OTHER STATE.

Code Civ. Proc. § 942, provides that the unwritten or common law of another state may be proved as a fact by oral evidence, and that the books and reports of the cases adjudged in the courts thereof must also be admitted as presumptive evidence of the unwritten or common law. *Held*, that a judgment of the court of another state is presumptive evidence of the unwritten or common law of such other state.

4. FOREIGN CONTRACT—VALIDITY—COMITY.

Where, in an action against the surety on a lease, it appears that the lease was of immovable property in another state, and was made between two corporations of that state, and that the Supreme Court of such state has declared the lease illegal and ultra vires because of the self-emasculation of corporate powers and tendency to monopoly, the contract will not be enforced in New York.

Hirschberg, J., dissenting.

Appeal from Trial Term, Kings County.

Action by the Bath Gaslight Company against John T. Rowland. From a judgment for plaintiff, defendant appeals. Reversed.

Argued before BARTLETT, JENKS, WOODWARD, HIRSCHBERG, and HOOKER, JJ.

Charles D. Ridgway, for appellant.

Geo. C. Holt (James McKeen, on the brief), for respondent.

JENKS, J. The defendant and Mr. Claffy were sureties of a lease. Plaintiff, the lessee, recovered a judgment in this court against Mr. Claffy, and now brings this action pursuant to section 1937 of the Code of Civil Procedure. In the action against him, Mr. Claffy made plea, inter alia, that the lease was ultra vires, but was defeated. See Bath Gaslight Co. v. Claffy, 151 N. Y. 24, 29, 45 N. E. 390, 36 L. R. A. 664. The learned Special Term gave judgment for the plaintiff on the ground that the defense of ultra vires had not arisen since the judgment against the defendant's joint debtor, and that it had been pleaded by him; citing section 1939 of the Code of Civil Procedure. But this defendant could raise any defense which he might have made in the original action if the summons had been served on him contemporaneously with his fellow surety, section 1939, supra. The fact that his codefendant raised this defense does not, therefore, preclude him. Section 1933 of the Code, in part, provides:

¶ 4. See Contracts, vol. 11, Cent. Dig. § 455.

"As against a defendant not summoned, it [the judgment] is evidence only of the extent of the plaintiff's demand, after the liability of that defendant has been established by other evidence."

In Morey v. Tracey, 92 N. Y. 581, the court, per Andrews, J., held that such an action is not to enforce the original judgment; that such judgment bound the defendant served, and authorized execution against his separate property, or the joint personal property of both defendants, but that the object of this action is to establish liability of the defendant upon the original contract, which was not adjudicated by the original judgment, and "of which it was no evidence"; that the liability of the defendant could only be cast by evidence aliunde; and that defendant could make any defense which he might have made in the original action. If by raising a similar defense the first codefendant did not preclude this defendant therefrom, it must follow that this defendant is free to establish it by evidence. Otherwise it would be a formal mockery. For to what purpose is an assurance of a plea, coupled with a refusal to permit proof thereof? And what is the form of a plea, without the substance of proof thereof? For what good is a plea to him who will not be heard? If the failure of the other surety in such plea would foreclose the defendant, with the possible result that he is charged on his separate estate by an adjudication whereto he was not summoned, and despite a valid defense available when he was called to court, then there is opportunity for collusion between a plaintiff and one joint debtor who may wittingly fail in his plea and thus shut out his fellow. The adjudication in the first action may be stare decisis, but it cannot be res adjudicata.

In the case at bar the lease was made in Maine between two corporations of Maine, engaged in business in that state. The property subject to the lease was in Maine, the lease was for performance there, and there, too, the contract of suretyship was executed. The law presumes that the parties intended that the law of Maine should control as to the validity and effect of the contract. Dickinson v. Edwards, 77 N. Y. 573, 33 Am. Rep. 671; Story on Conflict of Laws, § 240; Wilson v. Lewiston Mill Co., 150 N. Y. 314, 44 N. E. 959, 55 Am. St. Rep. 680. I think that the contract of the sureties is to be governed by the laws of the same state. Richardson v. Draper, 23 Hun, 188, affirmed in 87 N. Y. 337; Milliken v. Pratt, 125 Mass. 374, 28 Am. Rep. 241; Brandt on Suretyship & Guaranty, § 144, and authorities cited. In Claffy's Case, supra, the court say:

"It is said, however, that the contract was a Maine contract, and that by the law of that state the lease was illegal and void, and that no action could be maintained upon it. It is a sufficient answer to this claim that the law of Maine on the subject does not appear by the record, and that it is the duty of this court, therefore, to determine the case according to the law of New York."

But the essential difference between Claffy's Case and this case is that this defendant, in support of his plea of ultra vires, read in evidence a judgment of the Supreme Judicial Court of Maine in Brunswick Gaslight Co. v. United Gas, Fuel & Light Co., 85 Me.

532, 27 Atl. 525, 35 Am. St. Rep. 385. That judgment, while not in evidence in Claffy's Case, was discussed in the dissenting opinion of Vann, J. 151 N. Y. 49, 45 N. E. 398, 36 L. R. A. 664. It is presumptive evidence of the unwritten or common law of Maine (section 942, Code Civ. Proc.); and, as it was not met by counter evidence, such law is by it established, and could not be disregarded. Wattson v. Campbell, 38 N. Y. 153. The Maine judgment, which was upon a lease similar to that in this case, in an action against the same lessee, determined that the lease was void, as ultra vires the corporation, upon the ground that such a corporation could not dispose of its corporate powers, to disability, and that such traffic in corporate franchises tended to create monopolies. The court held that there could be no recovery of rent upon the lease, and that the remedy was disaffirmance of the contract, and suit as upon a quantum meruit.

The defendant, then, to sustain his plea, has shown that the lex loci contractus declares the contract to which he is surety to be ultra vires. After stating the rule that the validity of a contract is to be decided by the law of the place of performance, and that, "if valid there, it is, by the general law of nations, jure gentium, held valid everywhere by the tacit or implied consent of the parties," Judge Story says:

"The same rule applies vice versa to the invalidity of contracts. If void or illegal by the law of the place of the contract, they are generally held void and illegal everywhere. This would seem to be a principle derived from the very elements of natural justice. * * * If void in its origin, it seems difficult to find any principle upon which any subsequent validity can be given to it in any other country." Story, Conflict of Laws, § 243.

In Hyde v. Goodnow, 3 N. Y. 266, the court say:

"Thus assuming that the contracts in question had been made in Ohio, and that by the laws of that state such contracts are declared void, the courts of this state would be bound also to declare them void, though by their terms they were to have been performed here, and though if made here they would have been valid contracts. This exception is required by that just comity and public convenience upon which all international law is founded. A contract which is illegal and void, either by the law of the place where it is made, or that of the place where it is to be performed, is illegal and void everywhere. See Andrews v. Herriot, 4 Cow. 510, note 'a,' and cases there cited."

See, too, Northrup v. Foot, 14 Wend. 248; The Ætna Ins. Co. v. Aldrich, 26 N. Y. 92, 97; Wattson v. Campbell, supra; Bard v. Poole, 12 N. Y. 495, 501; Story on Conflict of Laws (8th Ed.) p. 327 et seq.; Id. p. 471, and authorities.

Story quotes with approval the Supreme Court of Louisiana:

"In a conflict of laws, it must oftener be a matter of doubt which should prevail; and that, whenever that doubt does exist, the court which decides will prefer the law of its own country to that of a stranger. And if the positive laws of a state prohibit particular contracts from having effect according to the rules of the country where they are made, the former must prevail."

But it is urged that the court should not regard the common law of Maine. Let us stop to consider the features of the case at bar: First, we have a contract between Maine corporations, concerning immovable property in that state, made and to be performed in Maine; sec-

ond, the Supreme Court of Maine has declared the contract illegal and ultra vires for radical vices, namely, the self-emasculation of corporate powers and the tendency to monopoly; third, the Maine judgment declares that there can be no recovery of rent upon the contract; fourth, one of the Maine corporations travels to this forum, and seeks to avoid the effect of the Maine judgment in order to hold a surety upon the contract which the Maine judgment pronounced ultra vires; fifth, we are asked, in effect, to uphold the Maine contract in order that a surety may smart.   It is well settled that a court may refuse to regard the lex loci contractus if it be immoral or unjust, or if it harm our own citizens.   Story, Conflict of Laws, § 244; Kelly v. Crapo, 45 N. Y. 86, 6 Am. Rep. 35; King v. Sarria, 69 N. Y. 24, 25 Am. Rep. 128.   In Teel v. Yost, 128 N. Y. 387, 394, 28 N. E. 353, 355, 13 L. R. A. 796, the court, per Ruger, C. J., say:

"It should, in any event, be for the gravest reasons alone, and those demanded by the clearest rules of public policy and justice, that the courts of one state should deliberately deny to the decisions of the courts of another state the authority which they possess in the state where rendered."

If the courts of one state should refuse to exercise comity because its common law differed from that of a sister state, then, of course, comity would never be exercised, for when there were no differences there would be no place for comity.   In King's Case the court, arguendo, says:

"In Comm. of Ky. v. Bassford, 6 Hill, 526, the Supreme Court of this state maintained an action on a bond given to secure the payment of money to be raised and distributed by a lottery, on the ground that it was a valid and legal obligation in Kentucky, where it was assumed that it was made, and where it was to be executed, though opposed to the statutory policy of this state.   And the rule has been so far carried, in one jurisdiction, in recognizing the law of the domicile, as to enforce a claim of property in slaves (Madrazo v. Willes, 3 Barn. & Ald. 353.   See, also, Greenwood v. Curtis, 6 Mass. 358 [4 Am. Dec. 145]; Com. v. Aves, 18 Pick. 193, 215; The Antelope, 10 Wheat. 66, 6 L. Ed. 268); and so far in another jurisdiction as to hold good a sale of lottery tickets in this state (McIntyre v. Parks, 3 Metc. 207)."

The note of Judge Story (Conflict of Laws, § 38) indicates the views of eminent judges that, in such a case as the one in hand, the recognition of the lex loci contractus is not merely based upon comity or ex comitate, but, rather, ex debito judiciæ.   There is a further consideration:   The citizen of each state is, of course, entitled to the rights and remedies which are open to our own citizens.   But the courts often lay stress on the fact that comity will not be exercised when it prejudices the rights of our citizens, or denies to them the benefit of our own laws; e. g., Kelly v. Crapo, supra; Edgerly v. Bush, 81 N. Y. 199, 204; Story, Conflict of Laws, p. 324; Marshall v. Sherman, 148 N. Y. 9, 25, 42 N. E. 419, 34 L. R. A. 757, 51 Am. St. Rep. 654.   Surely a Maine corporation which leaves its own state cannot, in our courts, call for the exclusion of comity toward courts of that state on the ground last indicated.

The learned counsel for the defendant makes the point that as the judgment in 85 Me. is but evidence of the common law, which was available subsequent to the execution of the lease and the giving of the bond, it should not affect the contract of suretyship.   The judg-

ment did not create the law, for it was but proof thereof. It wrote the legal principle which in the theory of the common law was still unwritten. The judgment is not evidence of the common law, which but came into life when the judgment was rendered. Norway Plains Company v. Boston & Maine Railroad, 1 Gray, 263, 61 Am. Dec. 423. See, too, Rensselaer Glass Factory v. Reid, 5 Cow. 587, 629; Henry v. The Bank of Salina, 5 Hill, 523, 525; Jacob v. State, 3 Humph. 493.

The evidence is that the contract of lease was void in the state of Maine, as against public policy. Such contracts will not be upheld if they be injurious to the public good. Brooks v. Cooper, 50 N. J. Eq. 761, 763, 26 Atl. 978, 21 L. R. A. 617, 35 Am. St. Rep. 793. If the original contract was illegal, then the surety is discharged of his suretyship therefor. In addition to the authorities cited by Vann, J., in his dissenting opinion in Claffy's Case, supra, I may venture to add Joslyn v. Dow, 19 Hun, 494; Denison v. Gibson, 24 Mich. 187; Ferry v. Burchard, 21 Conn. 597; Winn v. Sanford, 145 Mass. 302, 14 N..E. 119, 1 Am. St. Rep. 461; Swift v. Beers, 3 Denio, 70; Kimball v. Newell, 7 Hill, 116; Bard v. Poole, 12 N. Y. 501. There is an exception to this principle, as is indicated by some of these authorities, but this is when the contract itself is legal.

Judgment reversed and new trial granted, costs to abide the event. All concur, except HIRSCHBERG, J., who dissents.