THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* METRO-POLITAN SURETY COMPANY, Defendant.

In the Matter of the UNITED STATES FIDELITY AND GUARANTY COMPANY, Appellant, *v.* JOHN F. YAWGER, as Receiver of the METROPOLITAN SURETY COMPANY, Respondent.

Third Department, November 15, 1916.

Guaranty and suretyship — cosureties on bond of government employee — effect of insolvency of one surety — preferred claim by Federal government against insolvent surety corporation — right of surety after paying liability to preference in payment from estate of insolvent cosurety.

A surety company executed a bond to the United States, conditioned for the faithful performance by a government employee of his duties, which bond was procured through one V., the agent of the company who after collecting four annual premiums and remitting the same to the company, left its employ and entered the employ of another surety com-

pany. The government employee then made application through V. to the other company for a bond which was executed by it substantially similar, and with the same conditions as the first bond, and the annual premiums to the first company then ceased. On the application which the employee made to the second company through V., the latter stated "I have heretofore placed his bond through U. S. F. & G. Co. This is renewal, old bond having run four years." The new bond bore the words "Renewal Bond." After the second bond became effective and during subsequent years, the government employee defaulted and the conditions of both bonds became broken. The second surety company became insolvent and a receiver was appointed. Thereafter the Federal government recovered on the first bond and the company paid the amount of the judgment and filed its claim with the receiver of the second company for said amount.

*Held,* that the two surety companies stand in the relation to each other of cosureties, and that as between themselves each was liable for the payment of one-half of the liability of the employee to the government;

That the claim of the first surety company was not a contingent liability at the time of the appointment of the receiver of the second company;

That under the United States Revised Statutes, section 3466, the government had a preferred claim against the insolvent surety company prior to the claim of any other creditor;

That the first surety company having paid said preferred claim is subrogated to all the rights of the government, including its right of priority, not only against the principal for the whole amount, but also against its cosurety for its proportional amount, but such preference does not apply to interest accruing on the claim since its payment to the government.

Appeal by the United States Fidelity and Guaranty Company from an order of the Supreme Court, made at the Albany Special Term and entered in the office of the clerk of the county of Albany on the 10th day of June, 1916, confirming a report of a referee and allowing one-half of its claim of $8,182.60 to be paid from any surplus remaining after all legal and proved claims which accrued against the Metropolitan Surety Company on or prior to January 6, 1909, shall have been fully paid.

In November, 1901, the appellant, the United States Fidelity and Guaranty Company, executed a bond to the United States of America conditioned for the faithful performance by one McCowan of his duties as superintendent of an Indian school to which position he had been appointed under the Federal government, and conditioned also that the said McCowan would faithfully disburse all public moneys and honestly

account for the same and for all public funds which might come into his hands. This bond was procured through one Charles N. Vance, the agent of the United States Fidelity and Guaranty Company, located in the city of Washington, D. C., whose duties were to secure applications for bonds of government officials and employees and collect and remit the premiums therefor, and he did collect four annual premiums from McCowan and remitted the same to the said company. In December, 1905, Vance had left the employ of the appellant company and entered the employ of the Metropolitan Surety Company in a similar capacity. McCowan then made application through Vance to the Metropolitan Surety Company for a bond to the Federal government and the latter company executed a bond substantially similar and with the same conditions as the previous bond of the appellant company, and the annual premiums to the latter company then ceased. On the application which McCowan made to the Metropolitan Surety Company through Vance the latter made an indorsement certifying that he had known the applicant several years and believed him to be of good character and that his replies to the interrogatories contained in the application he believed to be true, and stating: "I have heretofore placed his bond through U. S. F. & G. Co. This is renewal, old bond having run four years." The new bond bore the words "Renewal Bond." After the last bond became effective and during the years 1906, 1907 and 1908, McCowan defaulted in his obligations to the United States and the conditions of both of said bonds became broken. On January 6, 1909, an action was begun to dissolve the Metropolitan Surety Company on the ground of its insolvency and on that day an order was made appointing John F. Yawger as receiver of said company. Thereafter the Federal government brought an action on the said bond executed by the United States Fidelity and Guaranty Company which resulted in a judgment against said company for the sum of $8,182.60, because of the violation of the conditions of said bond by said McCowan, which sum was paid by the said company. The receiver of the Metropolitan Surety Company was duly notified of said action and requested to defend the same. The United States Fidelity and Guaranty

Company thereupon filed its claim with the receiver of the Metropolitan Surety Company for the said sum of $8,182.60 paid by it to the Federal government under its bond aforesaid, which claim was rejected by the receiver. A referee appointed to determine the same has reported that the two companies stood in the relation to each other of cosureties for McCowan and were equally liable to the United States and has allowed the claim of the appellant against the receiver at one-half of the amount thereof, but has also found that it was not an existing liability but a contingent liability against the Metropolitan Surety Company on January 6, 1909, when the receiver was appointed and that payment must, therefore, be postponed until after the payment of all claims and liabilities which had accrued against said Metropolitan Surety Company on the day last mentioned. The Special Term has confirmed the report of the referee and from such order of confirmation the United States Fidelity and Guaranty Company appeals to this court.

*Leonidas Dennis* [*William J. McArthur* of counsel], for the appellant.

*John Burlinson Coleman* [*Francis X. Brosnan* of counsel], for the respondent.

COCHRANE, J.:

We agree with the learned referee that the two companies stand in the relation to each other of cosureties and that, as between themselves, each was liable for payment of one-half of the liability of McCowan to the United States, which liability was covered by their respective bonds. Such was their relation to each other unless there was an agreement expressed or implied between themselves to the contrary. The appellant contends that by the execution of the last bond the appellant became a subsurety for the Metropolitan Surety Company and that as between the two companies the Metropolitan Surety Company was primarily liable. There is no evidence, however, of any such understanding between the two companies. No communication whatever passed between them on the subject. It does not appear that the appellant company knew of the

application which McCowan made to the Metropolitan Surety Company through Vance or of the indorsement by the latter on said application or that the appellant even knew of the existence of the subsequent bond. All it knew was that its annual premiums had stopped, but whether that was because McCowan had died or left the government service or for some other reason the appellant did not know so far as the evidence discloses. Nor is there any equitable reason why the appellant should stand in the relation of subsurety to the other company. The execution of the bond by the latter company in no way prejudiced the appellant but on the contrary relieved it of one-half of its liability because of the acts of McCowan. In the absence of any evidence the legal presumption is that the two companies were cosureties and the burden rests on the appellant to overcome this presumption which it has failed to do. The appellant, therefore, has a claim against the receiver herein for $4,091.30, as found by the referee.

We do not, however, agree with the referee in his conclusion that the claim was a contingent liability at the time of the appointment of the receiver and must, therefore, be postponed to the payment of other claims. It is said that the conclusion of the referee in this respect is sustained by the case of *Matter of Fleet* v. *Yawger* (205 N. Y. 135). The claim, however, is rather within the principle of *Matter of Empire State Surety Company* (214 N. Y. 553); *Matter of Empire State Surety Company* (216 id. 273), and *Matter of Museum of Fine Arts* v. *Metropolitan Surety Company* (171 App. Div. 15). Liability on these bonds because of the misdeeds or shortcomings of McCowan was complete before the appointment of the receiver. Liability depended on no contingent event thereafter to arise. A complete cause of action then existed against the Metropolitan Surety Company in favor of the United States. The Federal government did not have to wait for the happening of any event or contingency in order to enforce its claim. All that was done after the appointment of the receiver was by way of liquidation or enforcement of the claim, but liability existed complete and final when the receiver was appointed.

It is true, of course, that the appellant had no claim against its cosurety until it had paid the debt, but that is not the

point here.  The appellant has paid the debt, and in doing so it has become subrogated to all the rights and remedies which the United States had against the receiver at the time of his appointment.  The rule which requires the postponement of contingent claims is a harsh and arbitrary rule which exists *ex necessitate*.  The reason for the rule is well stated by the referee in his opinion as follows: "If claims which were contingent at the time of the commencement of the dissolution proceedings were allowed, then since the contingencies might never be resolved, or might take years before they were resolved, distribution of the assets among the rest of the creditors would become practically impossible."  The reason for the rule and, therefore, the necessity for its application does not exist in this case.  Here the receiver on the day of his appointment could have satisfied the claim of the United States.  There was a definite existing liability on that day depending on no contingency in the future which might theoretically have been liquidated by the receiver.  He knew then that it would have to be paid, and distribution of the assets of his estate and termination of the receivership in no respect depended on whether it was paid to the United States or to some one who by assignment or subrogation stood in the place of the United States. The case of *Frost* v. *Carter* (1 Johns. Cas. 73), cited with approval in the *Fleet* case, is relied on as holding a contrary doctrine.  That was a case of an indorser on a promissory note not due until after the assignment and, therefore, not provable as a claim against the assignee at the time of his appointment.  Whether or not the indorser would become liable depended on non-payment of the note by the maker in the future and also upon the observance of such requirements as are necessary to fix the liability of an indorser of negotiable paper.  That situation does not exist here.  Here was a valid complete cause of action against the Metropolitan Surety Company in existence at the time of the appointment of the receiver, and if a party holding such a cause of action subsequently assigns it to another it does not thereby lose its identity as an existing claim against the estate, and the appellant herein having paid such claim and having thereby become subrogated to the rights of the holder of such claim is in no

less favorable position than would be the original owner thereof. Whether a claim represents an existing or a contingent liability within the principle involved in a case like this depends on the nature of the claim and not on the ownership thereof.

But beyond what has already been said the United States had a preference in its claim against the insolvent corporation prior to the claim of any other creditor. The United States Revised Statutes in section 3466 provides: "Whenever any person indebted to the United States is insolvent, or whenever the estate of any deceased debtor, in the hands of the executors or administrators, is insufficient to pay all the debts due from the deceased, the debts due to the United States shall be first satisfied." In *Cook County National Bank* v. *United States* (107 U. S. 445) it was said concerning this statute: "The language of the section in the Revised Statutes is general and comprehensive in its terms and applies to demands of the United States against any insolvent person living, or the estate of any insolvent person dead." Corporations are to be deemed persons within the provisions of this statute and the priority of claims of the United States exists as to debts due from corporations to the United States. (*Beaston* v. *Farmers' Bank of Delaware*, 37 U. S. [12 Pet.] 102, 134.)

The appellant having paid this preferred debt is subrogated to all the rights of the United States including its right of priority not only against the principal for the whole amount, but also against its cosurety for its proportional amount. This was distinctly held in the case of *United States* v. *Ryder* (110 U. S. 729) where Mr. Justice BRADLEY, in discussing this subject, wrote as follows: "Are the sureties subrogated to the rights of the United States? The general right of sureties, when paying the debt of their principal, to be subrogated to the rights of the creditor, whether as a mortgagee, pledgee, or holder of a judgment or execution, or any other security, has been so often and so fully discussed that nothing further need be added on that subject. The recent treatise of Mr. Sheldon on the Law of Subrogation, and the notes to *Dering* v. *Earl of Winchelsea*, in 1 White and Tudor's Leading Cases in Equity, 100, refer to

the authorities, and exhibit the general results deducible therefrom; and in Mr. Burge's Treatise on Suretyship the rules of the civil law on the same subject are fully set forth. The doctrine is, that a surety paying the debt for which he is bound, is not only entitled to all the rights and remedies of the creditor against the principal for the whole amount, *but against the other sureties for their proportional part.* This is clearly the rule where the principal obligation is the payment of money or the performance of a civil duty. And in England the sureties of a debtor to the King (as for duties, taxes, excise, etc.), have always, since Magna Charta at least, had the right, upon paying the debt, to have the benefit of prerogative process, such as extent, or other Crown process adapted to the case, to aid them in coercing payment from the principal, and *compelling contributions from co-sureties.* Thus, where upon a *scire facias* issued against the heir and executor of one surety, the defendant paid the debt, it was ordered that he should stand in the place of the Crown, and have the aid of the court to recover either the whole against the principal, *or a moiety against a co-surety.* Manning's Exch. Pract. 563.* And where a collector of a township [or parish] was a defaulter, and the township was retaxed for the deficit, the same relief was given. MACDONALD, Ch. Baron, said:† ' The parish stands very much in the nature of sureties; and it is a reasonable practice that the party who has made good to the Crown the default of the defendant, should have the same remedy that the Crown itself would have.' "

In *United States Fidelity & Guaranty Co.* v. *Carnegie Trust Co., No. 2* (161 App. Div. 429) it was held that a surety paying a preferred claim of the State of New York against an insolvent corporation is entitled to be subrogated to all the rights and remedies of the State, including its right of priority the court using the following language: " It is familiar law that a surety paying the debt of his principal is entitled to be subrogated to all of the creditor's rights, privileges, liens, judgments and mortgages, and that to enjoy the benefit of these no assignment from the creditor is necessary. The

---

* 2d ed. [1827] p. 72.— [REP.    † Wightwicke, 1, 6.— [REP.

surety, by the mere fact of payment, is put into the shoes of the creditor. * * * No injustice will be done to the general creditors of the trust company by allowing plaintiff's claim to a preference, as it merely continues in force the preferential right of the State, subject to which all creditors become such, and it is to be borne in mind that plaintiff's bond was not given for the benefit of any other creditor than the State." ·That case was affirmed on the opinion below in 213 New York, 629.

Giving application to the foregoing doctrine it follows that the appellant, standing in the place of the United States, has a preferential claim against the assets in the hands of the receiver over the claims of other creditors, except that under the authority of *United States Fidelity & Guaranty Company* v. *Carnegie Trust Company* (*supra*) such preference does not apply to interest accruing on its claim since its payment to the United States.

It follows that the claim of the appellant as fixed by the referee should be paid from the assets in the hands of the receiver in preference to the claim of any other creditor, except that any interest which has accrued thereon since the payment of the same by the appellant to the United States should be postponed to the payment of the principal of other claims. (See *People* v. *Metropolitan Surety Company*, 218 N. Y. 628.)

The order should be modified in accordance with this opinion, and as so modified affirmed, without costs.

Order modified in accordance with opinion, and as so modified unanimously affirmed, without costs.