ALFRED H. NEWBURGER and Others, Respondents, *v.* SAMUEL L. LUBELL, Appellant, Impleaded with ABRAHAM P. LUBELL, Defendant.

First Department, May 18, 1934.

. *Morton L. Deitch* of counsel [*Sol M. Stroock* with him on the brief; *Stroock & Stroock*, attorneys]; for the appellant.

*Osmond K. Fraenkel* of counsel [*Goldsmith, Jackson & Brock*, attorneys], for the respondents.

GLENNON, J. This appeal is by Samuel L. Lubell from a judgment entered against him upon a general verdict directed by the court in plaintiffs' favor, notwithstanding a special verdict by the jury for appellant on a question of fact submitted to it.

In 1929 Jacob J. Lubell had a brokerage account with plaintiffs' firm. Abraham Lubell and Samuel Lubell, on October 25, 1929, and November 13, 1929, respectively, guaranteed the account of their brother Jacob by separate instruments. Concededly, on the latter date Abraham and Samuel became cosureties of Jacob's account. In 1930 a deficit arose, and Jacob's account was eventually liquidated.

The present action is brought against both Abraham and Samuel to recover the amount of the deficit in Jacob's account. The status of Samuel and Abraham with plaintiffs' firm was different. Abra-

ham had a regular trading account, which was closed out, by reason of plaintiffs' claim against Jacob. Abraham had agreed to arbitrate any controversy relating to his account. The question then arose as to whether or not the guaranty agreement was covered by the arbitration clause. Samuel, on the other hand, had no trading account with plaintiffs. He merely deposited collateral in addition to his guaranty agreement.

When Jacob's account was closed, plaintiffs moved at Special Term to compel Samuel and Abraham to submit to joint arbitration the question of liability on their guaranties of Jacob's account. The application was denied and plaintiffs appealed to this court, which affirmed without opinion (232 App. Div. 745).

Plaintiffs thereafter obtained leave to appeal to the Court of Appeals from so much of the order as denied their application to compel arbitration between them and Abraham. They did not appeal from the order in so far as it concerned Samuel. Judge LEHMAN, writing for the unanimous court which reversed the order in part (257 N. Y. 213), held: " The clear intent of the agreement between the parties was that any controversy concerning the manner in which the plaintiffs dealt with the securities in their customer's account should be determined by arbitration, and it is immaterial how that controversy arises. * * * The controversy concerning the account of the guarantor is confined to the authority of the plaintiffs to dispose of the securities or contracts in his account, and that controversy should be determined by arbitration."

Plaintiffs conceded on that appeal that Abraham could not be compelled to arbitrate the amount owing on the guaranteed account.

Plaintiffs and Abraham then proceeded to arbitrate. The principal question presented for determination was whether or not Abraham's guaranty was in effect at the time the deficit in Jacob's account arose. Abraham contended that he had been released from his guaranty, and that it had never been reinstated. Plaintiffs countered with a claim that there had been an oral reinstatement ten days after the release had been given. The arbitrators finally determined that Abraham's guaranty had been reinstated and that it was in full force and effect in December, 1930, when the deficit arose.

While the arbitration proceeding was pending, plaintiffs commenced this action against Samuel, founded upon his guaranty of Jacob's account. Samuel counterclaimed for affirmative relief.

Plaintiffs thereupon moved for summary judgment against Samuel. The motion was opposed upon the ground that, since plaintiffs had released Abraham of his guaranty, Samuel, the cosurety, was released to the extent of one-half of his surety obliga-

tion and that he had already paid his share of the loss. The motion was denied at Special Term.

After the arbitrators had determined the questions submitted to them against Abraham, plaintiffs moved, in this action, to join him as a party defendant. The application was granted, and the order was affirmed by this court (234 App. Div. 849).

A supplemental complaint was served. It consisted of one cause of action against both Samuel and Abraham based upon their respective guaranties and the arbitration award. Samuel thereupon moved to compel the plaintiffs to separately state and number their causes of action, and the court at Special Term granted the motion.

Plaintiffs then served a further complaint. Whereupon Samuel moved to have stricken from the cause of action against him all reference to the arbitration proceedings. The motion was granted and the complaint, which is presently before the court, was served.

The first cause of action in the present complaint is against Abraham. It contains allegations concerning the guaranty, the loss in the account, the history of the arbitration between plaintiffs and Abraham, and the rendition of judgment thereon, in which it was held that Abraham's guaranty was in full force and effect. The balance of this cause of action relates to the amount of the deficit in Jacob's account.

The second cause of action, which is directed against Samuel, is identical with the first, except for the omission of any reference to the arbitration proceedings between plaintiffs and Abraham. This omission had been compelled by the order of Special Term, to which reference has already been made.

Before proceeding further, mention might be made of the fact that plaintiffs moved for summary judgment against Abraham on the first cause of action. Judgment had already been entered against Jacob, in a separate action against him, for the amount of the deficit in his account. Plaintiff's motion was founded upon that judgment, as well as upon the award of the arbitrators. The application was granted and judgment was entered in the sum of $14,307.97 against Abraham. The judgment was affirmed on appeal (236 App. Div. 788).

The facts thus far enumerated present the history of this litigation since its inception. We may now concern ourselves with the principal issues arising between plaintiffs and Samuel. These are to be found in the answer of Samuel and in plaintiffs' reply.

It is alleged in Samuel's answer and counterclaim that he guaranteed Jacob's account with the plaintiffs; that in connection with his guaranty he deposited certain collateral security; that Jacob's account had also been guaranteed by Abraham, thus making him

and Abraham cosureties; that on April 25, 1930, plaintiffs, without Samuel's knowledge or consent, released Abraham from his guaranty, and, as a result thereof, released Samuel *pro tanto;* that plaintiffs used and applied the proceeds and avails of the collateral deposited by Samuel in reduction of the deficit in Jacob's account; that the value of the collateral so used and applied was in excess by $4,328.62 of Samuel's liability under his guaranty, as reduced by the release of Abraham. Samuel demanded affirmative judgment in this sum against the plaintiffs.

In their reply the plaintiffs denied the release of Abraham on April 25, 1930. As a first defense, it is alleged that Abraham's release had been reinstated with Abraham's consent. In the second defense, plaintiffs alleged the arbitration proceedings between plaintiffs and Abraham, and pleaded that, by reason of the judgment confirming the arbitrator's award, Abraham was estopped from questioning his liability under the guaranty, and that, therefore, Samuel lost no right of contribution, as cosurety, against Abraham. In the fourth defense it is set forth that Abraham served a counterclaim against Samuel in this action claiming the right to contribution from Samuel by reason of Abraham's guaranty of Jacob's account. From this the plaintiffs conclude that Abraham was estopped from questioning Samuel's right to contribution, and thus Samuel sustained no damage by virtue of the release of Abraham's guaranty. The fifth defense was based upon the fact that plaintiffs recovered summary judgment against Abraham, and that, because of this judgment, Abraham was estopped from questioning liability under his guaranty, and, as a result, Samuel's right of contribution was not in anywise affected. There are other partial defenses to which it is unnecessary to refer. There was a further amendment of the reply upon the trial.

On these pleadings, as well as on affidavits, plaintiffs moved for summary judgment against Samuel. This motion was denied, and the order denying it was affirmed by this court (236 App. Div. 788). Samuel now argues that this court, on the appeal from the order denying summary judgment, determined all of the legal questions then involved in his favor. However, this court simply decided in effect that there were questions of fact presented, which could not be determined upon pleadings and affidavits. The important issue which had to be decided was whether or not Abraham's guaranty had been reinstated.

Upon the trial of this action there was received in evidence, over the objection and exception of Samuel's counsel, (1) the judgment obtained by plaintiffs against Abraham on the arbitration award; (2) the order granting plaintiffs' motion in this action for summary

judgment against Abraham; and (3) the judgment entered thereon against Abraham in this action in plaintiffs' favor for $14,307.97. We are of the opinion that the admission in evidence of these documents constitutes reversible error.

The result of the arbitration proceeding to which Samuel was not a party is not binding upon him. (*Gillmore* v. *Equitable Surety Co.*, 228 App. Div. 188.) The same ruling must be applied to plaintiffs' order and judgment against Abraham, since plaintiffs' right to recover, as distinguished from the amount of their recovery, was founded chiefly upon the arbitration award. It follows, therefore, as a natural consequence, that Samuel was free to litigate in this action the question of Abraham's release and the so-called reinstatement. (*Bath Gas Light Co.* v. *Rowland*, 84 App. Div. 563; affd., 178 N. Y. 631.)

At the conclusion of the testimony the motions made by the plaintiffs for the dismissal of the counterclaims were granted. The following question was then submitted to the jury: " Did Abraham P. Lubell on May 5th, 1930, orally reinstate the written guarantee contained in Plaintiffs' Exhibit 3 which had been cancelled on April 25th, 1930, by Defendants' Exhibit C?"

No exceptions were taken by plaintiffs' attorney to the submission of that particular question, nor to the court's charge in regard to it. The answer of the jury was, " No."

Counsel for plaintiffs thereupon moved to set aside the verdict as contrary to the weight of evidence and renewed his motions for a direction of a general verdict on all of the questions involved. The court thereupon directed a verdict in favor of the plaintiffs against the defendant Samuel L. Lubell for the sum of $16,209.41; in favor of the plaintiffs against the defendant Abraham P. Lubell for the sum of $118.20, and in favor of the plaintiffs on the counterclaim of Samuel L. Lubell. In so far as Samuel L. Lubell was concerned, the court, in so doing, fell into error.

The jury found that Abraham's guaranty had not been reinstated. Its verdict has ample support in the evidence. While the arbitrators reached a different conclusion as to Abraham, still Samuel was in nowise bound by their determination.

It is indisputable that since both Samuel and Abraham unconditionally guaranteed Jacob's account, as between themselves, each was liable for one-half of any amount required to be paid by the other under his guaranty. (*People* v. *Metropolitan Surety Co.*, 175 App. Div. 43; *Armitage* v. *Pulver*, 37 N. Y. 494.) Furthermore, the authorities are uniform in holding that the release of one cosurety releases the other *pro tanto.* (*Wanamaker* v. *Powers*, 102 App. Div. 485; affd., 186 N. Y. 562; *Benedict* v. *Rea*, 35 Hun, 34; *Waggoner* v. *Walrath*, 24 id. 443; affd., 92 N. Y. 639.)

This brings up for consideration the problem of whether or not the claimed reinstatement of Abraham's account — assuming for the moment that there was a reinstatement — had the effect of reimposing upon Samuel full and unconditional liability on his guaranty for any loss in Jacob's account. We think not. When the release was given to Abraham on April 25, 1930, the claim by the plaintiffs against Samuel was discharged to the extent of one-half of the surety obligation. Since this is true, the original liability of Samuel was not reinstated by any new agreement, which might have been entered into later, without his knowledge and consent. The testimony offered by the plaintiffs indicated, quite clearly, that Abraham was possessed of considerable means on April 25, 1930, and that his financial position was sound even as late as the month of June. If Samuel had been informed that Abraham had been given a release by the plaintiffs at the time it was delivered, he could have notified them that he elected to revoke his guaranty as of the latter part of April or the early part of May, and have his liability determined at that time. (*Emery* v. *Baltz*, 94 N. Y. 408; *Reilly* v. *Dodge*, 131 id. 153; Arnold Suretyship & Guarantee, § 91; *Hunt* v. *Roberts*, 45 N. Y. 691.) It is idle to urge, therefore, that Samuel's position was not changed to his detriment by reason of the acts and conduct of the plaintiffs.

While Samuel claims that he is entitled to a direction of a verdict on his counterclaim on this appeal, he overlooks the point that the question as to value of the securities is one of fact, which must be disposed of by a jury. It is well nigh impossible on this record to accurately determine this issue.

The judgment so far as appealed from should be reversed, with costs; the special verdict reinstated, and judgment entered dismissing the complaint, with costs; the action is severed and a new trial ordered upon the issues raised by the counterclaim of Samuel L. Lubell and the denials, and the sixth, seventh and eighth separate and distinct partial defenses in the reply.

FINCH, P. J., concurs; UNTERMYER, J., concurs in result; MERRELL and TOWNLEY, JJ., dissent and vote for modification.

MERRELL, J. (dissenting). The trial of this case was the final chapter in a long series of litigations between the plaintiffs, constituting the brokerage firm of Newburger, Henderson & Loeb, against Samuel L. Lubell and Abraham P. Lubell. Three Lubell brothers, Jacob, Abraham and Samuel, are involved in this controversy. Jacob Lubell had a brokerage account with the plaintiffs. Abraham also had such an account with said brokers, and executed a guaranty agreement which provided that Abraham would guar-

antee the account of said Jacob J. Lubell, and pledging collateral security of Abraham in the hands of plaintiffs to secure said account of Jacob. The defendant, appellant, also, subsequently to the execution of the guaranty agreement of Abraham Lubell, guaranteed the account of Jacob Lubell, pledging the defendant, appellant's collateral in the hands of the plaintiffs for such account of Jacob. Jacob's account was closed out and the plaintiffs attempted to hold Abraham and Samuel upon their guaranty agreements and, under the provisions of the agreements, attempted to compel Abraham and Samuel to arbitrate. Their motion for arbitration was denied at Special Term and the denial was affirmed by this court. (232 App. Div. 745.) Thereupon they brought action against Samuel on his guaranty. Permission was granted to the plaintiffs to appeal to the Court of Appeals concerning the arbitration of Abraham. The Court of Appeals reversed this court and directed arbitration as to Abraham. (257 N. Y. 213.) As the result of such arbitration Abraham was held on his contract of guaranty. A prior motion for summary judgment against Samuel had been made, which was denied. The only question raised was whether the arbitration, which was found to be binding by the Court of Appeals on Abraham, was also binding on Samuel. The contention of Samuel seems to have been that Abraham had been released, Samuel claiming that, by reason of that release of his coguarantor, he had also been released *pro tanto* or for one-half of the guaranty. It seems to us that the question presented by this appeal is not whether the arbitration is binding upon Samuel, but, rather, whether Samuel is to be deemed to have been discharged of his obligation because of something which occurred to release Abraham from his guaranty. However, the Court of Appeals held that Abraham was not, in any respect, released. If Abraham was liable, then we think Samuel must be held to be liable. We think, therefore, notwithstanding the result of the motion for summary judgment, denial of which was affirmed by this court, that the Trial Term was correct in holding that the defendant Samuel Lubell was to be held by reason of his guaranty. As a practical matter, it does not seem to us that Samuel could be said to suffer by reason of the directed verdict against him, because the defendant Samuel would be subrogated to whatever recovery the plaintiffs secured in the action against Abraham, and so would not sustain any loss. It is very evident from what transpired at the close of the testimony in this case that the court below was of the opinion that, Abraham having been found liable, Samuel's liability followed, and, therefore, properly directed the verdict in favor of plaintiffs against Samuel.

The general rule is that if a creditor releases one of several sureties,

the obligation of the remaining sureties is discharged to the extent to which they might have required the released surety to have reimbursed them after they had paid the debt. (*Wanamaker* v. *Powers,* 102 App. Div. 485; affd., 186 N. Y. 562.) At law the extent of the discharge of the remaining sureties' obligation was in proportion to the number of sureties. In equity it was in proportion to the number of solvent sureties at the time of the release. The equitable rule is the rule generally applied at the present time. Accordingly, as applied to the facts of this case, if Abraham were released, unquestionably, when the demand for payment is made against Samuel, he may demand, as in mitigation or as a set-off to the demand against him, a credit of fifty per cent of the debt which he could have recouped against Abraham had Abraham not been released.

The opinion of Mr. Justice GLENNON proceeds upon the application of this rule. It seems, however, that the mechanical application of the logic of this general rule of suretyship defeats the realities of the situation in this particular case. This was well pointed out by Chief Judge CARDOZO while discussing a similar situation in his work entitled, " The Nature of the Judicial Process," where he wrote (at p. 152 *et seq.*) as follows: " It is a rule of common law that a surety is discharged from liability if the time of payment is extended by contract between the principal debtor and the creditor without the surety's consent. Even an extension for a single day will be sufficient to bring about that result. Without such an extension, the surety would have the privilege upon the maturity of the debt of making payment to the creditor, and demanding immediate subrogation to the latter's remedies against the principal. He must, therefore, it is said, be deemed to have suffered prejudice if, by extension of the due date, the right has been postponed. I have no doubt that this rule may justly be applied whenever the surety can show that the extension has resulted in actual damage, as where the principal in the interval has become insolvent, or the value of the security has been impaired, *though even in such circumstances the measure of exoneration ought in justice to be determined by the extent of the damage suffered.* Perhaps there might be justice in permitting exoneration whenever the surety had tendered payment of the debt, and demanded subrogation to the remedies against the debtor. Perhaps the burden of disproving prejudice ought to be cast upon the creditor. No such limitations have been recognized. The rule applies to cases where neither tender nor actual damage is established or pretended. The law has shaped its judgments upon the fictitious assumption that a surety, who has probably lain awake at nights for fear that payment may some day be demanded,

has in truth been smarting upon the repressed desire to force an unwelcome payment on a reluctant or capririous creditor. The extended period has gone by; the surety has made no move, has not even troubled himself to inquire; yet he is held to be released on the theory that were it not for the extension, of which he knew nothing, and by which his conduct could not have been controlled, he would have come forward voluntarily with a tender of the debt. Such rules are survivals of the days when commercial dealings were simpler, when surety companies were unknown, when sureties were commonly generous friends whose confidence had been abused, and when the main effort of the courts seems to have been to find some plausible excuse for letting them out of their engagements. Already I see some signs of a change of spirit in decisions of recent dates. I think we may well ask ourselves whether courts are not under a duty to go farther, and place this branch of the law upon a basis more consistent with the realities of business experience and the moralities of life." (Italics are the writer's.)

Acting on the suggestion of this high authority, it seems advisable to decide this case from the point of view of the realities of the situation rather than from a logical deduction, contrary to the reasonable expectations of business men. It is true that, as Mr. Justice GLENNON in his opinion remarks, there was a slight period between the release and the reinstatement of the guaranty during which Samuel might have elected to revoke his guaranty as of the latter part of April or the early part of May and had his liability determined, if he had been informed that Abraham had been released. But, as Judge CARDOZO wrote, Samuel was not lying awake nights wondering whether Abraham had been released. These two brothers were working together guaranteeing their third brother's account and were in a position to know full well what the situation was. They apparently were not in the least worried and Abraham was apparently as ready later to reinstate the guaranty as the creditor had been to release him temporarily. There is not the slightest evidence to show that had the creditor informed Samuel of the temporary release of Abraham, Samuel would have taken steps to force some kind of liquidation or exoneration.

On this state of facts we have to consider as a case of first impression the effect of the restoration of the obligation of a discharged surety to its original force. The opinion of Mr. Justice GLENNON is certainly in error to the extent that in this situation Samuel is discharged of fifty per cent of his liability. The reinstatement of Abraham's guaranty must be treated either as wiping out the original discharge or as bringing in a third surety who would be available to Samuel upon payment of the debt. The rule as above

phrased is that a remaining surety, when one has been released, is discharged only to the extent to which he *upon payment of the debt* might have required the released surety to reimburse him. Now, assuming that Abraham's original promise is to be deemed completely released, the reinstatement of it brings in at least the equivalent of a third contract of guaranty and on payment of the amount of money due plaintiff from the principal debtor the inquiry is most pertinent as to how much of this third contract of guaranty Samuel could recover as against Abraham.

We cannot blind ourselves to the fact that Abraham is under a binding judgment of the court to pay the full amount of the debt. Accordingly, if Abraham paid he would be subrogated to the creditor's debt and surely could recoup for fifty per cent of his payment against Samuel. There should be a similar result when the creditor sues Samuel.

If we resort to the artifice of saying that, because Abraham has once been released and then reinstated as guarantor, there are the equivalent of three guarantors in this situation one of whom has been released, then, under the equitable rule of subrogation, the obligation should be divided in three and on this suit against Samuel, there should be at least two-thirds of a recovery.

However, such a solution of the problem when two of the contracts of guaranty have been made by the *same* person would be so artificial as to be an absurd result. The sensible way to analyze the situation it seems to us is to treat the temporary release of Abraham as a temporary withdrawal of security which the creditor had as against the principal debtor and to hold that the reinstatement of Abraham's guaranty restored all the security to which the cosurety might ultimately be subrogated, and, therefore, to treat the temporary release, if a damage at all, as *damnum absque injuria.* (See Arant Suretyship, § 66.)

The question involved in this case is not helped by the doctrine of *res judicata.* The case cited by Mr. Justice Glennon (*Bath Gas Light Co.* v. *Rowland,* 84 App. Div. 563; affd., 178 N. Y. 631), which involved the doctrine that when one cosurety pleaded *ultra vires* and a judgment resulted, that judgment was not binding on the other sureties, we think has no application to the facts of this case. That decision goes to the existence of the contract and any surety who was not a party to the original suit of course could plead, when sued, any defenses to the existence of the contract that there might be. That is quite different from holding that a guarantor when sued on a good contract may set up in mitigation or set-off facts amounting to a claim that he has lost his right of subrogation against a coguarantor by the act of the creditor, when, in a collateral

action, a binding judgment has been taken against that very coguarantor. A result which permits the relitigation of the question of the existence of a binding obligation against Abraham is absurd and should not be followed. We are dealing with a very simple claim by Samuel that his cosurety is no longer liable on the debt and that, therefore, the judgment against himself as a defendant must be mitigated or set off by the loss which he has suffered. To effect this, *he must show a loss*. It is impossible for him to show this loss in the face of the existing judgment against Abraham, and to permit him to do so by relitigating the facts which were decided in the arbitration is equivalent to impeaching the arbitration judgment which the Court of Appeals has upheld. Such a result in the law is intolerable.

The appellant relies largely upon the decision of this court affirming the denial of the motion for summary judgment against Samuel. While this court did affirm the order, deeming that, in view of the prolonged litigation in this case, it was better to have an end of it by trying the facts than by attempting to dispose of it on affidavits. Defendant having been given every opportunity to state a defense and having failed to do so, the learned trial justice was warranted in disregarding the verdict as wholly contrary to fact and in directing a verdict on the substantial claim.

In view of the confusion, however, as to the value of the securities, which is one of fact, this judgment should be modified to the extent of directing an assessment of the damages by a jury, and as so modified, it should be affirmed.

TOWNLEY, J., concurs.

Judgment so far as appealed from reversed, with costs to the appellant, the special verdict reinstated, and judgment directed dismissing the complaint, with costs; the action severed and a new trial ordered upon the issues raised by the counterclaim of said defendant, appellant, and the denials, and the sixth, seventh and eighth separate and distinct partial defenses in the reply.